LAURA F. EISENHAUER *vs.* WILLIAM CEPPI & another.

Suffolk.    March 7, 1921. — May 26, 1921.

Present: RUGG, C. J., BRALEY, PIERCE, CARROLL, & JENNEY, JJ.

*Landlord and Tenant,* Landlord's liability to member of tenant's family. *Evidence,* Materiality. *Contract,* Construction. *Practice, Civil,* Exceptions.

An agreement by a landlord with a tenant to put the premises in suitable repair, make them safe and keep them in good repair and in safe condition, places an unusual obligation upon the landlord and should be reasonably construed.

A landlord, who, when letting a dwelling house, agreed to put it in suitable repair, make it safe and keep it in good repair and in safe condition during the occupancy by the tenant, is not liable to the tenant's daughter for injuries sustained by her in falling from the roof of a veranda, upon which she had stepped to shake a dust rag, although the fall was caused by a defect in a railing constructed around the roof of the veranda, if it appears that the roof of the veranda sloped to the front and to the sides, was not intended to be walked or stepped upon nor used by the tenant, and could be reached only by going through a window, the sill of which was twenty-one and one fourth inches higher than the roof of the veranda and twenty-two and one half inches above the floor of the room.

At the trial of an action against the landlord for injuries received as above described, it was proper to exclude as immaterial evidence tending to show that one employed by the landlord to make repairs on a veranda roof inspected the broken railing a month after the accident and found it decayed and in a generally unsafe condition.

It was *held* that an exception by the plaintiff at the trial above described to the admission in evidence of testimony of the defendant that he formerly occupied the house, that the roof was constructed to shade or shelter the floor of the piazza and the railing was put on to beautify the house, that it was not intended that any one should go out on the roof and that he never knew of any one going there, must be overruled as the evidence was immaterial and in the circumstances the plaintiff was not harmed by its admission.

A statement by an agent of a landlord when showing the dwelling house above described to the plaintiff's mother before the letting that " this is where you get the good view and air," referring to the sloping tin roof of the veranda upon which he had stepped through the window which was the only means of access to the roof, did not extend to the landlord, who had agreed to put and keep the dwelling house in safe condition and repair, an obligation requiring him to keep the roof of the veranda safe for dwelling purposes.

TORT for personal injuries sustained by the breaking of a defective railing constructed around the roof of a veranda of a house alleged to be owned by the defendants, William and Laura Ceppi, and rented to and occupied by the father of the plaintiff with his family, including the plaintiff. Writ dated March 15, 1917.

In the Superior Court the action was tried before *Raymond*, J. The material evidence is described in the opinion. The jury returned a verdict for the defendants; and the plaintiff alleged exceptions.

*E. S. Farmer & J. E. Cotter*, for the plaintiff.

*J. M. Morrison*, for the defendants.

CARROLL, J. The plaintiff was injured on November 10, 1916, by falling from the roof of a veranda or piazza of a dwelling house, owned by the female defendant. The house was hired by the plaintiff's father and occupied by his family, including the plaintiff, for about six years prior to the accident. It was two stories in height, with a gable roof. On the front a veranda, with a wooden railing around the roof, extended to the second story. There was evidence that when the contract was made the defendants agreed to make the premises "safe, keep them in good repair and in safe condition during the occupancy " of the tenant. The plaintiff stepped from one of the rooms to the veranda roof and was shaking a " dust rug " [rag?] when a part of the railing gave way and she fell to the ground, a distance of from twelve to twenty feet. The veranda extended the full width of the house. It was about twenty-two feet in length, and six or seven feet wide. Its roof was covered with tin and sloped from the house to the railing a little over six inches, and from the centre to

either side about six inches. There were three windows opening on to it, but no door. The window sills were twenty-one and one quarter inches from the roof; and from the floor of the rooms twenty-two and one half inches. The jury found for the defendants and the case is before us on the plaintiff's exceptions to the admission and exclusion of certain evidence.

One Lamont, a witness for the plaintiff, testified that he was employed by the defendant William Ceppi to make repairs on the veranda roof; the offer was made to show by this witness that on December 11, 1916, when he inspected the railing he found that the wood appeared to be decayed and showed a generally unsafe condition. The evidence was excluded, subject to the plaintiff's exception. In the deposition of the defendant Laura Ceppi, she testified that she formerly occupied the house, that the roof was constructed to shade or shelter the floor of the piazza and the railing was put on to beautify the house. She also testified that it was not intended that any one should go out on the roof and that she never knew of any one going there. To the admission of this evidence the plaintiff also excepted. The evidence admitted and that excluded were immaterial; the plaintiff was not harmed by the ruling of the trial judge.

Under the agreement relied on by the plaintiff, the duty was upon the defendants to keep the premises safe at all times, with the right to enter at all reasonable times to examine them and make such repairs as were necessary for that purpose. *Miles* v. *Janvrin,* 196 Mass. 431; *S. C.* 200 Mass. 514. *Fiorntino* v. *Mason,* 233 Mass. 451. Such an agreement placed an unusual obligation on the landlord and it should be reasonably construed. In the light of all the circumstances what did the parties intend when the agreement was entered into? Did the promise of safety extend to all parts of the premises and for all the uses to which the tenant might see fit to put them? The building was a dwelling house and was to be so occupied. It was to be kept safe for the tenant and his family to live in. While the piazza roof was a part of the demised premises, it was not intended that it was to be kept safe to walk or stand upon, or for the tenants' use. It could be reached only by going through a window, the sill of which was twenty-one and one quarter inches higher than the roof. The tin roof sloped to the front and to the sides. It would hardly be contended that under the agree-

ment the landlord was obliged to keep the roof of the building, which was reached by a skylight, in a safe condition to stand or walk upon. It was evident that the roof of the building was not suitable for such a purpose, and equally plain that the sloping tin roof of the veranda was not so adapted. Under the contract the landlord was required to keep the piazza roof in a safe condition with reference to the parts of the tenement which were to be used as a dwelling, so that the premises dwelt in or used in connection therewith would not be unsafe by reason of the condition of the roof; but no duty was imposed on the defendants of keeping it in this condition as a part of the premises to be used as a dwelling. When a dwelling house is let and the landlord agrees to keep the premises safe, it is not intended that they are to be kept in this condition of safety for all purposes and for every kind of service, nor that all parts of the premises are to be kept in this condition when it is apparent that certain parts are not designed for use by the tenant as the tenement which is occupied and dwelt in. The defendants' obligation at most extended to that portion of the premises where the tenant was to reside and did not extend to other parts which the tenant was not expected to use in the course of the tenancy.

We find nothing in the evidence to support the plaintiff's contention that the roof was to be kept safe to the same extent and for the same purposes as the part that was to be occupied and dwelt in. A witness for the plaintiff testified that, when the contract was made, the defendants' agent, when showing the premises, raised the window of the front room; " we stepped out on to the piazza and he said ' This is where you get the good view and air.' " There was no assurance in this statement that the roof was to be occupied by the tenants in the same way as the floor of the piazza or the living apartments. The reference to the view and air did not extend the obligation of the defendants so as to require them to keep the roof safe. And by this statement it was not understood that the roof was to be used as a part of the dwelling house and to be kept safe as the premises dwelt in by the tenant's family.

As the evidence offered and the evidence admitted against the plaintiff's exception were immaterial and had no bearing on the case, there was no harmful error in the ruling.

*Exceptions overruled.*