John Hearn, Administrator, *vs.* The E. E. Hilliard Company.

First Judicial District, Hartford, October Term, 1923.

Wheeler, C. J., Beach, Curtis, Burpee and Keeler, Js.

As a general rule the landlord is not liable for injury to a tenant caused by an open, visible and dangerous condition in the leased premises existing when the tenant took possession.

In the present case an eighteen months old child of the tenant fell into an open canal or raceway in the rear of the leased premises, used for supplying water-power to the defendant landlord's mill, and was drowned. The tenant was an operative in the mill, rented the premises in question—which were owned by the defendant—

and had the use and control of the back-yard where, as claimed by the plaintiff, the child fell into the water. The plaintiff also offered testimony to show that two other children had fallen into the canal within nine years, though they escaped injury; and that those occurrences were talked about in the mill. *Held* that such considerations did not affect the reason of the general rule, viz: that as to obvious risks, the tenant by accepting the premises as they appeared, had brought himself within the maxim *volenti non fit injuria.*

The so-called attractive-nuisance doctrine, even in jurisdictions where it is approved, cannot logically be invoked by a tenant with respect to an attractive nuisance on premises under his own control.

A tenant who chooses to leave the premises as they are when he takes possession and control, cannot charge the landlord with the consequences of his own inaction.

Argued October 5th—decided November 7th, 1923.

ACTION to recover damages for causing the death of the plaintiff's intestate by negligence, brought to the Superior Court in Hartford County where a demurrer to the complaint was overruled (*Maltbie, J.*), and the case was afterward tried to the jury before *Haines, J.;* by direction of the court the jury returned a verdict for the defendant, and from the judgment thereon the plaintiff appealed. *No error.*

As to the physical facts there is no controversy. The defendant owned and operated at Buckland in the town of Manchester a mill in which woolen goods were made. In connection with this business it owned and rented to employees five one-and two-family houses fronting on a highway known as Adams Street. The plaintiff administrator, with his wife and four children, occupied the easterly half of one of the two-family houses. In the rear of these houses and about twenty-seven feet distant from the plaintiff's tenement, was an open canal or raceway for supplying water-power to the defendant's mill, running substantially parallel to Adams Street. The canal carried water from a mill pond westerly of the plaintiff's tenement to a screen about one hundred and

sixty-five feet easterly of the east wall of the plaintiff's tenement. The rate of flow through the canal was variously estimated from eight miles to three-eighths of a mile per hour. The bank of the canal was more or less grown up with bushes and it was not at all points easily accessible. The back door of plaintiff's tenement opened on its easterly side close to the rear, and a path led past the door to the bank of the canal. The plaintiff's youngest child was a boy about eighteen months old. On April 21st, 1921, he was last seen sitting on the step of the back door and at that time was nominally under the care of a child five years old. Not long afterward he was found in the canal at the screen, and died from drowning soon after being taken from the water. There was no direct evidence as to where or how he got into the water, and none as to when he got in except that he was taken out in a dying condition about fifteen minutes after his absence from the back door step was first noted. Other facts in evidence are referred to in the opinion.

*John J. Dwyer,* for the appellant (plaintiff).

*John T. Robinson,* for the appellee (defendant).

BEACH, J. The plaintiff's claim is that the defendant was negligent, in view of all the circumstances, in failing to protect the bank of the canal so that children of tender years would not fall into it; but the court in directing a verdict for the defendant charged the jury that there was no evidence from which the jury could reasonably determine where the child fell into the water, whether he fell in at or near the end of the path behind the plaintiff's tenement, and was carried down to the screen by the water, or whether he left the premises in the rear of the tenement and fell in at or near the

screen. And further, that the only fair conclusion reasonably to be drawn from the evidence was, that the premises in the rear of the tenement, while not expressly included in the lease to the plaintiff, were intended to be used and were in fact used as part of the rented premises, and that the law put upon the tenant and not upon the landlord the responsibility for the continuance of the condition of the leased premises which existed, with the full knowledge of the tenant, when he took possession under the lease, and remained unchanged with his full knowledge.

Since the allegation of the complaint, and the claim of the plaintiff, is that the child came to his death by falling into the canal while on the premises in the rear of the tenement, it is apparent that the case turns on the question whether the jury could reasonably have found that the defendant retained such dominion and control over the canal bank in the rear of the premises that the law would impose on it the duty of doing what was necessary to make it safe.

The material facts bearing on that point and appearing on the record and in evidence are as follows: The complaint alleges that the "ground between the said dwelling and the raceway was, at all times herein mentioned, used as a rear yard, and was intended to be so used, by the plaintiff and his said family"; and that the "defendant at all times herein mentioned knew that the said rear yard between the said dwelling-house and the said raceway was regularly used by the said children of the plaintiff, including his intestate James Hearn, as a playground."

Plaintiff testified that he had no written lease; that he was familiar with the premises before he went there; that when he hired the place from Mr. Wood, superintendent of the defendant company, his understanding was that "of course" the back yard went with the house

"always did you know," and as far as he knew that was Mr. Wood's understanding, and at that time the conditions of the back yard and the bank and canal were the same as on April 21st, 1921.

Mr. Hilliard, the president of the defendant company, in answer to questions by the court, testified that the house was not on any defined lot, and that there were no fences separating the houses. Then the following questions and answers: "By the court: Q. Is there any arrangement with the tenants as to how much or what land they use in connection with the houses? A. No, there has never been any definite line there. Q. So that at the front of the houses, on the side and back, it is used . . . by all the tenants in that vicinity? A. Well, we leave that for them to adjust more or less. Q. No attempt made by the company to define it? A. Well, we don't like to mix into those things unless we have to."

This testimony evidently refers to the partition of the whole tract among the several tenants, and does not afford any reasonable basis for concluding that the defendant reserved the dominion and control of any part of it. There was some evidence that the children of the tenants played where they pleased, but none that the defendant maintained a common playground for them.

After the trial court had announced its intention to direct a verdict for the defendant and given its reasons for doing so, plaintiff's counsel moved for leave to amend the complaint by alleging that the defendant rented the house only, and that it retained control over the tract as a whole, at the same time disclaiming any intention of going outside of the evidence. The court refused to allow the amendment on the ground that the evidence could not reasonably be construed by the jury so as to lead to the conclusion that the back yard was

not a part of the tenement under the control of the plaintiff. In so deciding we think the court was right, and the plaintiff concedes that if that be so, the general rule of law is that the defendant is not liable for injury caused by an open and visible dangerous condition existing when the plaintiff took possession of the leased premises.

Plaintiff claims, however, that the special circumstances of this case afford a basis for an exception to the general rule. He points out that the danger of small children falling into the canal was or ought to have been known to the defendant; that testimony was offered to show that within nine years two other children had fallen into the canal, though by good fortune they escaped injury; and these instances were talked about in the mill. The proof as to a third instance failed for lack of personal knowledge by the witness. The canal was admittedly not a part of the leased premises, though it furnished the boundary of one side of the tract. But these considerations do not affect the reason of the rule, which is that as to obvious risks the tenant by accepting the premises as they appear, brings himself equitably within the rule *volenti non fit injuria.* Pollock on Torts (10th Ed.) pp. 531, 588.

The complaint also harks back to the attractive-nuisance doctrine which is discredited in this State. *Wilmot* v. *McPadden,* 79 Conn. 367, 65 Atl. 157; *Mullen* v. *Mohican Co.,* 97 Conn. 97, 99, 115 Atl. 585. Without in the least meaning to reopen any discussion of that doctrine, it may be added that even in the jurisdictions where it is approved, it cannot logically be invoked by a tenant in respect of an attractive nuisance on premises under his own control.

For the same reason the other authorities cited on plaintiff's brief are irrelevant. If the tenant chooses to leave the premises as they are when he takes posses-

sion and control, he cannot charge the landlord with the consequences of his own inaction.

There is no error.

In this opinion the other judges concurred.