**Floyd Taylor, Plaintiff-Appellant, v. Christ Geroff and Helen Geroff, Defendants-Appellees.**

**Term No. 52–F–9.**

Opinion filed May 2, 1952.

Released for publication June 5, 1952.

MORRIS B. CHAPMAN, of Granite City, for appellant.

FRED P. SCHUMAN, of Granite City, for appellees.

MR. JUSTICE BARDENS delivered the opinion of the court.

The defendants Christ Geroff and Helen Geroff were the owners of a four-family apartment building located in Granite City, Illinois. The basement of the building is divided by a wall running east and west in the center of the building and south of this wall was a common entryway for the use of the upper and lower apartment tenants on the south side of the building. In this part of the cellar were two furnaces, one for each apartment. Each furnace had its own coal-storage bin and its own flue. In February of 1950 plaintiff rented the upstairs south apartment from the defendants on a month-to-month basis. Part of the consideration of the lease was that plaintiff was to buy his own coal and fire the furance for his apartment. Plaintiff or his wife did all the firing. At the commencement of the tenancy defendants represented to plaintiff that the furnace was in good repair and agreed to make any needed repairs.

After moving into the apartment plaintiff was bothered with smoke which came up to his apartment through the hot-air registers and he complained to the defendants. In September of 1950 the defendants had some repairs made. This failed to alleviate the smoking and plaintiff protested to defendants but no further repairs were made.

On the morning of December 26, 1950, between seven and eight o'clock, a. m., plaintiff went to the basement

to fire his furnace. He shook down the ashes and removed them and placed two shovelsful of coal in the furnace. He went upstairs and opened the draft for about thirty minutes and closed it. He received a telephone call and while talking his wife heard a noise and went to the basement. After the phone call, plaintiff went to the basement and found it full of smoke from the opened furnace door. He opened the windows to permit the smoke to escape and closed the furnace door. When the smoke had cleared he attempted to get the fire to burn better. His wife went upstairs to change the draft. The plaintiff noticed puffs of smoke coming from the furnace door and he stepped back from the furnace. As he did so, the gas in the furnace exploded and the force of the explosion knocked him backwards against the wall, and he fell with his left leg pinned underneath him.

On February 19, 1951, plaintiff brought this suit for damages as a result of the injuries he suffered from the explosion in the furnace.

The complaint, after setting up facts about ownership and tenancy, set out the following in paragraphs four, five, and six:

"4. That the said furnaces aforesaid were repaired by defendants and that defendants during said tenancy retained said furnaces in said common cellar as aforesaid and retained control of the repair and proper operation of them. .

5. That the defendants had a duty by reason of the foregoing towards plaintiff, a tenant, to keep said common cellarway and the furnace and other appliances therein, belonging to him, in a reasonably safe condition.

6. That said defendant wholly failed to perform this duty and negligently and carelessly permitted, suffered, and allowed the furnace, which supplied heat solely to plaintiff's apartment and to no other, and the

pipes and attachments thereto to become and remain in an unsafe and defective condition."

Defendants filed an answer admitting ownership of the apartment building in question, but denying all other allegations.

Trial was had before a jury on June 21, 1951, and in addition to the testimony of the plaintiff and his wife which tended to prove the facts hereinbefore set out, there was also evidence of a witness by the name of Gwaltney. This witness had been engaged in the sheet-metal business since 1935 and had worked on and was familiar with the operation and installation of hot-air furnaces and had installed some two hundred of them. He made an examination of the furnace in question on March 26 and 27, 1951. At that time he found smoke coming out of the side of the building and upon examination noted that at a point beneath the roof of the building the flue or chimney used in connection with the furnace that heated plaintiff's apartment contained a number of holes due to the fact that the mortar between the bricks was bad; that there was no lining in the flue; and that he inserted a rule into these holes a distance of eighteen, inches. He further testified that the condition of the flue was such that on a windy day it would cause gas in the furnace to remain rather than to be emitted through the top of the chimney. In answer to a hypothetical question, he testified that in his opinion this condition could have been the cause of the explosion and that it was the only thing he could observe that would cause such an explosion if the furnace was properly fired.

At the close of all of the plaintiff's evidence the trial court instructed the jury to return a verdict for the defendant and entered judgment in defendants' favor and against plaintiff for costs. This appeal followed.

██ ██

██ The law is well settled that right of action by a tenant against his landlord for personal injuries caused by defects in leased premises over which the landlord retains no control is based upon fraudulent concealment and necessitates proof of actual knowledge on the part of the landlord of the defect; *Hamilton v. Baugh,* 335 Ill. App. 346; 32 Amer. Jur., Landlord and Tenant, paragraphs 652 and 671; 52 C. J. S., Landlord and Tenant, paragraph 417; that the tenant takes the premises as he finds them without any particular warranties as to their condition; that the rights of the tenant in this respect are not altered by a promise on the part of the landlord to repair unless the promise amounts to a covenant to keep the premises in a safe condition. *Cromwell v. Allen,* 151 Ill. App. 404; *Farmer v. Alton Building & Loan Association,* 294 Ill. App. 206; *Breazeale v. Chicago Title & Trust Company,* 293 Ill. App. 269.

██ It is equally well settled that where a landlord retains control of some portion of the premises for the benefit of himself or other tenants the landlord owes a duty of exercising reasonable care to keep such portion in a reasonably safe condition; that this duty is owed the tenant and others lawfully using such portion. *Murphy v. Illinois State Trust Company,* 375 Ill. 310; *Payne v. Irvin,* 144 Ill. 482.

██ Turning now to the case at bar and assuming that the plaintiff has produced sufficient proof of the causal connection between the holes in the chimney or flue and the explosion, we find the evidence shows that the defendants did retain control over so much of the cellar and cellarway as was necessary to give access to both tenants to their respective furnaces and coalbins and for such other activities as were designed and intended to be carried out in the basement. The evidence shows conclusively, however, that defendants

59

retained no control over the operation of the furnace which was used to heat the plaintiff's apartment nor its pipes or chimney. The defendants' promise to make repairs if needed was not such retention of control, either for the benefit of the landlord or the other tenants, as would impose upon them the duty to keep the furnace in a reasonably safe condition.

Plaintiff cites cases from other jurisdictions to the effect that the making of repairs can be treated as evidence that the landlord reserved control over a particular portion of the premises or a particular appliance. These cases might be of some value if the evidence concerning the control of the furnace or flue was in dispute. The cases are not persuasive because here the plaintiff's evidence shows that the defendants did not retain such control.

We hold that the lower court properly directed a verdict in favor of the defendants at the close of plaintiff's evidence.

*Judgment affirmed.*

CULBERTSON, P. J. and SCHEINEMAN, J., concur.