NORA SEAMAN *v.* JOSE HENRIQUES ET AL.

BROWN, C. J., JENNINGS, BALDWIN, INGLIS and O'SULLIVAN, Js.

562

Argued February 4—decided March 17, 1953

*William L. Hadden,* with whom was *Charles L. Flynn* and, on the brief, *Clarence A. Hadden,* for the appellants (defendants).

*Albert L. Coles,* with whom, on the brief, was *James J. O'Connell,* for the appellee (plaintiff).

INGLIS, J. In this action a tenant seeks to recover from her landlords for personal injuries. She was standing on a roof for the purpose of hanging laundry on a pulley line and fell. The jury returned a verdict for her. The defendants have appealed, claiming errors in the charge and in the denial of their motion to set aside the verdict.

The plaintiff claimed to have proved the following facts: In January, 1947, she became a tenant in a four-family house then owned by Chris Hanson. Later, but before the plaintiff's fall, the defendants acquired title to the property. The tenement occupied by the plaintiff and her family was the second and third floors on the north side of the building. The first-floor apartment below the plaintiff's included a room which extended to the east beyond the rear of the second floor, and over this room was a hip roof which was within the defendants' possession and control. There was no door opening onto the roof from the plaintiff's apartment but access was had to it through her pantry window, which faced east. The rear edge of the roof was about seven feet from the window. From the wall of the house, the roof sloped with a 16 per cent grade to its rear edge. The same degree of pitch prevailed on its northerly end, and a hip was formed where the two planes joined. The outer edge of the roof was thirteen feet above the ground.

When the plaintiff moved into the apartment, and continuously from then until she fell, a pulley was affixed to the outside frame of the pantry window at a point about four feet above the roof. From this pulley a clothesline extended to

another pulley on a pole in the yard. This was the only arrangement afforded the plaintiff by the landlords for hanging out her laundry. After the defendants acquired title to the property they knew that the plaintiff used the clothesline and that she stood on the roof to do so. Other tenants also used the clothesline. Because of the lack of a guardrail around the edge of the roof, it was not in a reasonably safe condition for use as a place to stand while hanging clothes.

On April 5, 1949, the plaintiff was engaged in hanging two bedspreads on the clothesline. To do this she stood on the roof. After she had pinned the spreads to the line and pulled them out clear of the edge of the roof, she stepped back toward the window to a point about three feet from the wall of the house. Her intention was to put a clothespin on the line at the pulley so that the line would not move back and cause the spreads to hit the roof and become soiled. As she reached into her bag for the clothespin she held the line in her left hand. Suddenly the line broke. This threw the plaintiff off balance. She pitched forward over the rear edge of the roof and fell to the ground.

Upon the trial it was not claimed that the clothesline itself was defective. The sole defect in the premises claimed by the plaintiff as the basis of her cause of action was a structural defect consisting of a lack of a barricade or railing around the edge of the roof.

The defendants claimed to have proved that the clothesline had not been installed by them, that they did not know that the plaintiff or anyone else ever stood on the roof to hang out clothes and that the roof was apparently designed to be used only as a roof and not as a deck or porch. They also claimed

that the plaintiff was guilty of contributory negligence.

The defendants contend that the charge was erroneous in that it instructed the jury that if they found that the roof was retained in the landlords' control the only question for them to decide—outside of the questions of proximate cause, contributory negligence and amount of damages—was whether the defendants had failed to use reasonable care to keep the roof reasonably safe for use by their tenants. This, the defendants say, left out of consideration the question for what sort of use the roof must be kept reasonably safe.

A landlord does not, under all circumstances, owe to his tenant the duty of keeping reasonably safe the portion of his property retained in his control. Obviously, he owes no such duty unless the tenant has a right to use that portion of the property. If the tenant has nothing more than a license to use it, the landlord is not liable for patent structural defects. *Lubenow* v. *Cook,* 137 Conn. 611, 614, 79 A.2d 826; *Keesey* v. *O'Reilly,* 181 App. Div. 665, 668, 168 N.Y.S. 844; *Ivay* v. *Hedges,* 9 Q.B.D. 80, 81. Even if a tenant has a right appurtenant to his tenancy to use a portion of the property which remains in the landlord's control for certain restricted purposes, the landlord owes him no duty to keep that portion reasonably safe except for those purposes. *Eisenhauer* v. *Ceppi,* 238 Mass. 458, 460, 131 N.E. 184; *Robinson* v. *Leighton,* 122 Me. 309, 311, 119 A. 809; *Prickett* v. *Pardridge,* 189 Ill. App. 307, 309; *McAlpin* v. *Powell,* 70 N.Y. 126, 130; notes, 30 A.L.R. 1390, 49 A.L.R. 564. Consequently, in the present case the defendants' liability depended upon whether, within the terms, express or implied, of the lease, the plaintiff had the right, appurtenant to her

tenancy, to use the roof as a place from which to hang out clothes. This was a question of fact for the jury under proper instructions. *Wholey* v. *Kane,* 16 App. Div. 166, 168, 44 N.Y.S. 649.

The defendants are correct in their interpretation of the charge. The sum total of the court's instructions on this subject was to the effect that it was for the jury to find whether the roof was retained in the control of the defendants and, if they found that it was, whether the defendants had used reasonable care to keep the roof in a safe condition for use by their tenants. At no point in the charge was the jury's attention called to the question of fact whether the plaintiff had any right to use the roof for the particular purpose of hanging out clothes and the allied question whether that right was one appurtenant to her tenancy or a mere license. The defendants excepted to the charge on this ground. From the charge the jury must have understood that, if they found the roof was in the control of the defendants, then it was the duty of the defendants to keep the roof safe for all purposes, even including a purpose for which the plaintiff was not entitled to use it. They must also have been led to understand that, if the defendants had retained control of the roof and had failed to use reasonable care to keep it safe, they were liable to the plaintiff irrespective of the nature of the plaintiff's right. For these reasons the charge was inadequate and erroneous.

Since we have reached this conclusion it is unnecessary to discuss other assignments of error. Suffice it to say that the charge on contributory negligence was correct if it be assumed that the plaintiff had the right to use the roof for the purpose of hanging out clothes. Nor do any of the other assignments of error in the charge have merit.

In view of the fact that the case must be retried, it is advisable to discuss a question of law raised by the defendants in connection with their claim that the trial court should have set aside the verdict. Their contention is that, even if it is assumed that they retained control of the roof and that the plaintiff either by herself or in common with other tenants had the right to use it as she was using it, still she could not recover. The basis of this contention is that, inasmuch as the cause of her injuries was a structural defect existing and apparent at the commencement of her tenancy, the defendants owed her no obligation to make structural changes in order to make the roof safe for her use.

It is a well-recognized rule that a tenant takes the premises he leases as he finds them. In the absence of contractual or statutory provisions to the contrary, the landlord has no duty to correct defective conditions within the leased premises if those conditions would appear upon reasonable inspection by the tenant. *DesMarchais* v. *Daly,* 135 Conn. 623, 626, 67 A.2d 549; *Shegda* v. *Hartford-Connecticut Trust Co.,* 131 Conn. 186, 191, 38 A.2d 668; *Hearn* v. *E. E. Hilliard Co.,* 99 Conn. 666, 671, 122 A. 567. As to the question whether a landlord has this same immunity with respect to the portions of his property, outside the leased premises, which are retained in his control but which tenants have the right to use, there is a considerable confusion of authority. The so-called Massachusetts rule is that a landlord has no duty to a tenant to cure defects in the portions of the property of which he retains control which existed at the commencement of the tenancy, whether those defects are structural or are caused by lack of repair. It is held that the landlord performs his whole duty to a tenant, so far as patent

defects are concerned, if he maintains the premises under his control in as good a condition as they were when the tenant moved in. *Moynihan* v. *Allyn,* 162 Mass. 270, 272, 38 N.E. 497.

The Massachusetts rule, so far as it relates to defects caused by lack of repair, has been expressly repudiated in this state. *Brandt* v. *Rakauskas,* 112 Conn. 69, 73, 151 A. 315. In some of our cases there have been intimations that our law might be that a tenant assumes the risk of patent structural defects in the portions of the landlord's property which remain in the landlord's control. See *Aprile* v. *Colonial Trust Co.,* 118 Conn. 573, 579, 173 A. 237; *L'Heureux* v. *Hurley,* 117 Conn. 347, 355, 168 A. 8; *Carlson* v. *Associated Realty Corporation,* 114 Conn. 699, 705, 159 A. 885. Indeed, in the *Brandt* case, supra, 74, we were careful to point out that the defect for which the landlord was held liable was not structural in its nature. The question was finally settled for this state, however, in *White* v. *DeVito Realty Co.,* 120 Conn. 331, 180 A. 461. In that case the plaintiff had been injured as a result of a structural defect in a common passageway in the cellar of the building in which he was one of the tenants. We said (p. 335): "The rule [concerning patent structural defects within the premises leased] does not apply to those portions of the building which are not included within the apartment rented . . . . There does not arise, as a matter of law, out of [a] tenancy of a portion of a building any assumption of the risk of structural defects in other portions of the building not included in [the] lease." In the present case, the defendants may not escape liability merely because the structural defect which caused the plaintiff's injury existed and was apparent at the time her tenancy commenced.

There is error, the judgment is set aside and a new trial is ordered.

In this opinion the other judges concurred.