FRANCES T. MASTERSON, ADMINISTRATRIX (ESTATES OF GERALD T. MASTERSON, SR., AND GERALD T. MASTERSON, JR.), ET AL. *v.* NELLIE ATHERTON

BALDWIN, C. J., KING, MURPHY, ALCORN and MACDONALD, Js.

Argued October 6, 1961—decided January 16, 1962

*John F. McGowan*, with whom was *John J. Cotter*, for the appellant (defendant).

*Theodore I. Koskoff*, with whom was *Joseph W. Knott*, for the appellees (plaintiffs).

KING, J. Shortly after 1 a.m. on January 6, 1959, a very cold and windy night, a fire broke out in the cellar of the north duplex apartment in a two-family house in Stratford owned by the defendant. The

apartment was occupied under an oral month-to-month tenancy by the Masterson family, consisting of the plaintiff Frances T. Masterson's decedent and husband, Gerald T. Masterson, Sr.; Frances T. Masterson herself; and their four minor children, the plaintiffs Lynn F. Masterson, Richard G. Masterson and Paul J. Masterson, and Frances T. Masterson's other decedent, Gerald T. Masterson, Jr. Gerald T. Masterson, Sr., and Gerald T. Masterson, Jr., who was two and one-half years old, died as a result of the fire. The others in the family claimed to have received personal injuries. In all, six causes of action were tried together, four for personal injuries and two for the wrongful deaths of the decedents. The amount awarded by the jury for the death of Gerald T. Masterson, Jr., was originally $35,000, but a remittitur of $10,000 was filed. The award, even as so reduced, is claimed on this appeal to be excessive. Claims that the other awards are excessive have been abandoned.

There was abundant evidence, and the parties were in virtual agreement, that the cause of the fire was an overheated hot-air furnace which ignited portions of the woodwork near the furnace or chimney. The conflagration started in the area of the cellar above the furnace. There was also evidence that the fire "mushroomed up through the walls." The defendant's claim was that heat ascended from the furnace through the flue into the chimney and caused the chimney to overheat, with the result that the wooden flooring surrounding and in direct contact with the chimney ignited. The plaintiffs' claim seems to have been that heat rising from the top of the furnace and the ducts ignited the woodwork, beams or ceiling above them. There was little, if any, evidence from which the jury could determine

which claim, if either, was correct. It is important to note, however, that there was no evidence that actual flame or sparks escaped from within the furnace or any part of it so as directly to ignite any woodwork or other combustible material. As far as the evidence shows, heat from the furnace, not flame or sparks, caused the woodwork to ignite.

The jury brought in awards in varying amounts for all six plaintiffs. The basic claim in this appeal is that there is no evidence from which the jury could find for the plaintiffs and that therefore the court was in error in not rendering judgment for the defendant notwithstanding the verdict, or, at least, in not setting aside the verdict as against the law and the evidence on the issue of liability.

It was not disputed that the Masterson family had continuously occupied the apartment during the ten years prior to the date of the fire; that during that time there had been no structural changes involving the furnace or its position in relation to adjacent woodwork; that the Mastersons' occupancy during the entire period had been under an oral month-to-month lease at a rental of $43 monthly; and that each apartment, including its portion of the cellar, was physically separate and had its own furnace. The furnace, air ducts and cellar ceiling in question were therefore within the demised premises. *Torre* v. *DeRenzo,* 143 Conn. 302, 306, 122 A.2d 25.

The plaintiffs seem to assert the following defective conditions, although their claims on this vital point lacked clarity: (a) the failure to have fire stops; (b) the absence, or improper design, of an inner liner in the furnace; (c) the inadequacy of the heating capacity of the furnace; (d) the furnace's improper type of return air system; (e) the

lack of insulation on the furnace bonnet and air ducts and on the beams and woodwork near the top of the furnace and the air ducts; and (f) cracks in the furnace and in the inner liner (if there was any), claimed to have resulted from the negligence of a person who repaired the furnace in 1957 at the behest of the defendant.

Ordinarily, a tenant takes the demised premises as he finds them, and the landlord is not liable for defective conditions (that is, conditions making the premises not reasonably safe for the reasonably to be anticipated uses which the tenant would make of them) within the demised area. *Smith* v. *Housing Authority,* 144 Conn. 13, 16, 127 A.2d 45; *Seaman* v. *Henriques,* 139 Conn. 561, 567, 95 A.2d 701; *White* v. *DeVito Realty Co.,* 120 Conn. 331, 334, 180 A. 461; *Valin* v. *Jewell,* 88 Conn. 151, 157, 90 A. 36. While the general rule has often been phrased as an assumption by the tenant of the risk of defective conditions within the demised premises, the phrase "assumption of risk" is somewhat misleading, in Connecticut at least, since it suggests that the landlord must allege and prove, in an affirmative defense, the assumption of risk by the tenant. This is not the law. The use of the phrase "assumption of risk" in this connection is avoided by many, if not most, skilled text writers. See, for instance, 2 Harper & James, Torts § 27.16; 1 Tiffany, Landlord and Tenant § 86; Restatement, 2 Torts § 358. Assumption of risk in its true factual sense, under an affirmative defense, is illustrated in *Dean* v. *Hershowitz,* 119 Conn. 398, 411, 177 A. 262, and *Ziulkowski* v. *Kolodziej,* 119 Conn. 230, 234, 175 A. 780.

The general rule has, however, certain exceptions or at least apparent exceptions. The burden is on

the tenant to allege and prove the facts necessary to take his case out of the general rule of "caveat emptor" as to defects within the demised premises by alleging and proving that he is within one or more of the exceptions. *Valin* v. *Jewell,* supra, 155; *Martel* v. *Malone,* 138 Conn. 385, 388, 85 A.2d 246. In the first place, the rule does not apply to defects, whether resulting from faulty design or from disrepair, existing at the beginning of the tenancy, if they (a) were not discoverable on reasonable inspection by the tenant, and (b) were defects with a knowledge of which the landlord was chargeable. *Shegda* v. *Hartford-Connecticut Trust Co.,* 131 Conn. 186, 191, 38 A.2d 668; *Seaman* v. *Henriques,* supra; *DesMarchais* v. *Daly,* 135 Conn. 623, 626, 67 A.2d 549; and cases cited therein; see Restatement, 2 Torts § 358, comment a. It should be noted that actual knowledge, by the tenant, of a given defect is fatal to his case, even if the defect was not discoverable upon reasonable inspection. *Shegda* v. *Hartford-Connecticut Trust Co.,* supra.

There was no evidence that the lack of an asbestos covering over the pipes or the bonnet of the furnace, or the uninsulated woodwork above and around the top of the furnace, or the proximity of the furnace or the overhead pipes to the unprotected woodwork, or the claimed defective design of the return air system was not discoverable by the tenants upon reasonable inspection. Indeed, that they were so discoverable was testified to by Walter J. Douglas, a plaintiffs' witness, and was included by the plaintiffs in their claims of proof in the finding. The jury could not, on the evidence, have determined otherwise than that the tenants took the premises as they found them as far as these defects were concerned. The claimed defects of lack of fire stops and the

absence of an inner liner in the furnace perhaps require somewhat more discussion. The plaintiffs' evidence, from the chief of the Stratford fire department, was that there were no fire stops, and the jury could have accepted this evidence, even though the defendant offered evidence that there were fire stops. Although of course the presence or absence of fire stops would have nothing to do with the fact that the house caught fire from an overheated furnace, there was evidence from which the jury could find that had fire stops been present the fire would probably not have "mushroomed" up through the walls as rapidly, and this in turn would have given more time for the decedents, at least, to escape or be rescued. Aside from the difficult problem of proof of proximate cause, the plaintiffs' burden was to prove, inter alia, that the absence of fire stops, if they were absent, would not be discoverable by the tenants on reasonable inspection. Whether fire stops were so located that they would not have been discoverable by the tenants on reasonable inspection does not appear from the printed evidence, nor was it a matter open to the common knowledge of a juror. Furthermore, the finding contains a claim of proof of the plaintiffs that fire stops were "something easily seen and a reasonable view of a wall in a cellar would disclose their absence." Under this claim of proof, the plaintiffs were certainly not entitled to recover on the ground of the absence of fire stops.

There was a conflict in the evidence as to whether the furnace had an inner liner at the time of the fire. Of course, if there was an inner liner in good order, that would end the matter. The plaintiffs' appendix indicates that their expert, Douglas, testified that the absence of an inner liner was discoverable on

reasonable inspection, and as far as appears such inspection could have been made as well by the tenants as by the defendant. There was no evidence that the tenants would not, on reasonable inspection, have discovered the lack of an inner liner. This is especially true considering the ten years in which the tenants had used the same furnace.

The plaintiffs also claimed that the furnace was inadequate as to heating capacity. If this was so, then the tenants, in the absence of any explanatory evidence, would have been chargeable with notice of the inadequacy, in view of the ten years of their occupancy during which there had been no structural changes in the furnace or its position in the building. The plaintiffs' claims of proof were that, especially in cold weather, the outside of the furnace would get so hot you could not touch it. Certainly there was no basis in the evidence for a finding that any inadequacy of the furnace was not discoverable by the tenants on reasonable inspection.

Quite apart from any other considerations, the plaintiffs' failure to present evidence from which the jury could find that any of these defective conditions, if they were such, were not discoverable by the tenants on reasonable inspection leaves the verdict without support in the evidence on this theory of recovery and makes it unnecessary to consider whether there was evidence from which the jury could find that knowledge of any of these defects was chargeable to the defendant.

Another theory upon which the plaintiffs sought recovery was that the defendant had retained control of the furnace and surrounding areas by reason of an agreement to repair the furnace. The burden of alleging and proving retention of control, which

would remove the case from the general rule, was on the plaintiffs. *Martel* v. *Malone,* 138 Conn. 385, 388, 85 A.2d 246. An agreement to make repairs, if proven, would not alone support an inference of retention of control. *Taylor* v. *Geroff,* 347 Ill. App. 55, 60, 106 N.E.2d 210. It is true that the jury could find that the defendant had made repairs from time to time to the furnace and in the apartment, approximately as requested by the tenants. But as Mrs. Masterson herself testified, when there was a problem, such as a broken faucet, the defendant was called and came over and fixed it. The most that the jury could infer from this was that access to the cellar, in order to make particular repairs, would be granted by the tenants on making complaint to the defendant that those particular repairs were needed. "The . . . [tenants'] request, after taking possession, to the defendant to perform her promise to make repairs, would carry with it an implied license to her to enter for the purpose." *Dean* v. *Hershowitz,* 119 Conn. 398, 415, 177 A. 262. There was no evidence that the defendant was granted general access to the cellar for purposes of inspection and repair so as to support a finding of retention of control under the rule of cases such as *Smith* v. *Housing Authority,* 144 Conn. 13, 16, 127 A.2d 45.

The plaintiffs assert that Mrs. Masterson's testimony that she thought the defendant had keys to the house would support a finding of retention of control, as matter of fact. This is obviously not so because, if for no other reason, the testimony was insufficient to support a finding that the defendant had retained keys to the house. Nor was there any other evidence in the appendices warranting a finding of retention by the defendant of control of the tenants' portion of the cellar.

It is hardly necessary to refer to our settled rule that "[r]epairs, by a lessor, of a condition within an apartment may serve to corroborate other evidence indicating his reservation of a right of control. *Dean* v. *Hershowitz* [supra] . . . . But, in itself, testimony of such repairs is open to too many explanations other than an assumption of control and is too much outweighed by the implications growing out of the nature of the estate created by the leasing to afford a basis upon which to find a reservation of control of . . . [an instrumentality or area] wholly within an apartment and thus to impose upon the landlord a duty to make repairs. *Shegda* v. *Hartford-Connecticut Trust Co.,* 131 Conn. 186, 190, 38 A.2d 668." *Torre* v. *DeRenzo,* 143 Conn. 302, 307, 122 A.2d 25. The verdict in this case could not be based on any finding that the plaintiffs had proven retention of control of the furnace, ducts or adjacent areas of the cellar within the apartment so as to give rise to a duty to exercise reasonable care, through inspection, to have and keep that portion of the premises reasonably safe, under the familiar rule of cases such as *White* v. *DeVito Realty Co.,* 120 Conn. 331, 335, 180 A. 461; *Klahr* v. *Kostopoulos,* 138 Conn. 653, 655, 88 A.2d 332; and *Noebel* v. *Housing Authority,* 146 Conn. 197, 200, 148 A.2d 766.

The plaintiffs also claim to have removed the case from the general rule on the ground of negligence in the performance, or of the nonperformance, of a claimed obligation to repair the furnace, under the rule of cases such as *Chipman* v. *National Savings Bank,* 128 Conn. 493, 496, 23 A.2d 922, and *DesMarchais* v. *Daly,* 135 Conn. 623, 625, 67 A.2d 549. As far as the structural defects, such as the proximity of the furnace and air ducts to the woodwork, the

lack of insulation, the absence or improper design of the inner liner, and the inadequacy of the heating capacity of the furnace, are concerned, it is obvious that they are not in any sense the result of disrepair. Therefore they could not fall within the ambit of an obligation to repair, however arising. A covenant to repair is not a covenant to improve. The two are entirely different. 32 Am. Jur. 521 § 657, 524 § 658; *Ingalls* v. *Roger Smith Hotels Corporation,* 143 Conn. 1, 7, 118 A.2d 463; *Quist* v. *Duda,* 159 Neb. 393, 400, 67 N.W.2d 481. "Since the duty arises out of the existence of the contract to repair, the contract defines the extent of the duty." Restatement, 2 Torts § 357, comment a. For the purposes of this case, at least, a repair would consist of the correction of a condition which had become defective because of injury or of deterioration over a period of time, while an improvement would be a change in the original construction or installation in order to incorporate advancements in design. A repair restores the original condition. An improvement changes, supposedly for the better, the original condition. The correction of the defects under discussion would have nothing to do with repairs. It would obviously constitute the making of improvements. Consequently, any obligation to correct could not be based on a mere obligation to repair. If we assume that the plaintiffs proved a valid agreement to repair, it would impose no duty to correct the foregoing claimed defects.

There remain claims of defects in the furnace resulting from the failure to cement cracks in it and a crack or seam in the inner liner (if we assume that the furnace once had one) and to reassemble the furnace properly after the repairs to it which the defendant had a furnace expert make in 1957.

These appear to be true repairs and, if a valid agreement to repair was proven, to fall within the rule imposing liability for negligence in the performance of an agreement to repair. Besides, it was virtually admitted that the defendant actually did undertake, through her furnace expert, to repair the furnace in 1957; therefore, even if there was no valid agreement to repair and the repairs were undertaken voluntarily and gratuitously, there would still be liability for negligence in their performance, under the rule of cases such as *Palimas* v. *Aress Realty Co.*, 130 Conn. 687, 690, 37 A.2d 243. See Restatement, 2 Torts § 362; 2 Harper & James, Torts, p. 1514. For at least two reasons, however, the plaintiffs' verdict cannot be supported under either of the two rules just set forth. In the first place, there was no evidence from which the jury could find that the defendant's furnace expert failed to exercise reasonable care with respect to cracks or the reassembling of the furnace. *Chipman* v. *National Savings Bank*, 128 Conn. 493, 496, 23 A.2d 922. Secondly, even if the defects claimed were the result of negligence in making repairs, there is nothing to show that they, or either of them, could have constituted a proximate cause of the fire, which, as far as the evidence indicated, resulted from the overheating of the furnace as distinguished from the escape of flame or sparks from the furnace or air ducts. Even if there was evidence sufficient to warrant the jury in inferring that a total or partial absence of an inner liner could cause overheating of the furnace, there was no evidence that a crack or seam, of undescribed size and location, uncemented, would have that result or would result in the rotting away of all, or even a substantial part, of the inner liner, if we assume

that there originally was one. The plaintiffs' evidence was inadequate to support the verdict on the basis of any negligence by the defendant or her furnace expert in the repair of the furnace, whether the repairs were undertaken voluntarily or in the performance of a valid contract to repair. See *Des-Marchais* v. *Daly,* 135 Conn. 623, 625, 67 A.2d 549.

In summary, the evidence requisite for a recovery was lacking, whether the basis of recovery was to be the negligent failure to correct a defective condition not discoverable by the tenants on reasonable inspection and not actually known to them, or retention of control by the defendant, or nonperformance or negligence in the performance of an obligation to repair, or negligence in the making of repairs voluntarily undertaken.

The defendant moved for a directed verdict in her favor under Practice Book § 234. See Maltbie, Conn. App. Proc. § 206. Such a motion is a prerequisite to the applicability of that section. *Goldberger* v. *David Roberts Corporation,* 139 Conn. 629, 633, 96 A.2d 309. After the verdict in favor of the plaintiffs had been returned, the defendant moved that it be set aside and judgment rendered in her favor notwithstanding the verdict. Ibid. The court refused to disturb the verdict, and judgment was rendered on it. If the court had granted the motion to set aside the verdict and render judgment notwithstanding the verdict, that would have constituted a proper exercise of its discretion. *Senderoff* v. *Housatonic Public Service Co.,* 147 Conn. 18, 21, 156 A.2d 517. But it did not do so, and the question arises whether we should now order that action.

An important purpose of the enactment of § 234 of the Practice Book was to obviate new trials in

jury cases where there was insufficient evidence to support a verdict returned after the denial of a motion for a directed verdict unless there are circumstances indicating that the plaintiff, in justice, should have a new trial. In several cases, the court, having properly set aside a plaintiff's verdict, rendered judgment for the defendant. *Attardo* v. *Ambriscoe,* 147 Conn. 708, 712, 166 A.2d 458; *Palmieri* v. *Macero,* 146 Conn. 705, 708, 155 A.2d 750; *Parowski* v. *Bridgeport Hospital,* 144 Conn. 531, 532, 134 A.2d 834; *Robinson* v. *Southern New England Telephone Co.,* 140 Conn. 414, 421, 101 A.2d 491. In such a situation, it is ordinarily not a matter of difficulty to determine whether the court, in rendering judgment notwithstanding the verdict, abused its discretion under the rule. Here, however, the court refused to set aside the verdict. On the contrary, it rendered judgment on the verdict. The question, therefore, is not whether the court properly exercised its discretion in making a choice between the alternatives open to it after the setting aside of a verdict. Rather, the question is whether we can say that had the court set aside the verdict, as it should have done, it would have been an abuse of discretion for it to order a new trial rather than to render judgment for the defendant. The same problem was present in *Petrillo* v. *Bess,* 149 Conn. 166, 171, 179 A.2d 600; *Fabrizio* v. *Youhas,* 148 Conn. 426, 429, 172 A.2d 69; *Senderoff* v. *Housatonic Public Service Co.,* supra; and *Fisher* v. *Jackson,* 142 Conn. 734, 738, 118 A.2d 316.

We are concerned with the portion of § 234 which reads as follows: "If a verdict was returned the court may allow the judgment to stand or may set the verdict aside and either order a new trial or direct the entry of judgment as if the requested

verdict had been directed." Once it is clear, as it is here, that the verdict is without support in the evidence and should have been set aside, the question whether we should merely order the verdict set aside, thus permitting a new trial, or should order the trial court to take the next step and render judgment for the defendant depends on whether the trial court, in its discretion, could have found that "circumstances for which a party is not at fault have resulted in his failure to present the evidence which is lacking in his case and . . . that the necessary evidence will in reasonable probability be available on a retrial." *Robinson* v. *Southern New England Telephone Co.*, supra. There is nothing to indicate that either of these conditions is present here. Consequently, no justification appears for permitting a new trial. Since the verdict is against the evidence and there appears to be no justification for a new trial, there was error in the denial of the defendant's motion to set aside the verdict and for judgment notwithstanding the verdict. *Senderoff* v. *Housatonic Public Service Co.*, supra; *Petrillo* v. *Bess*, supra.

Section 234 of the Practice Book is practically identical, in its wording, with Rule 50 (b) of the Federal Rules of Civil Procedure. Consequently, cases construing and applying Rule 50 (b) are of persuasive, even though not controlling, authority. A collection of such cases may be found in an annotation in 85 L. Ed. 155, supplemented in 97 L. Ed. 90, and in an annotation in 69 A.L.R.2d 449. See also 5 Moore, Federal Practice (2d Ed.) ¶¶ 50.07-50.12; *New York, N.H. & H.R. Co.* v. *Henagan*, 364 U.S. 441, 442, 81 S. Ct. 198, 5 L. Ed. 2d 183; *Brunet* v. *S. S. Kresge Co.*, 115 F.2d 713, 715 (7th Cir.), cert. denied, 313 U.S. 577, 61 S. Ct. 1102, 85 L. Ed.

1535; *Capital Transit Co.* v. *Gamble,* 160 F.2d 283, 285 (D.C. Cir.) ; *Madden Furniture, Inc.* v. *Metropolitan Life Ins. Co.,* 127 F.2d 837 (5th Cir.).

There is error, the judgment is set aside and the case is remanded with direction to render judgment for the defendant in accordance with her motion for a directed verdict.

In this opinion the other judges concurred.