LUCY ANDERSON *v.* HAMILTON GARDENS, INC.

APPELLATE DIVISION OF THE CIRCUIT COURT

FILE NO. CV 1-642-4881

Argued February 7—decided August 19, 1966

*James J. Maher,* of Bridgeport, for the appellant (defendant).

*Howard C. Kaplan,* of Stamford, for the appellee (plaintiff).

DEARINGTON, J. The plaintiff sought to recover for property damage and for personal injuries resulting when a kitchen cabinet fell on her in an apartment which she leased from the defendant. The plaintiff claimed that the alleged injury and damage resulted from the negligent installation of the cabinet by the defendant and because it failed to inspect the cabinet after installation to make certain it was properly secured, it failed to warn the plain-

tiff of the possibility of improper installation, and it failed to provide safe kitchen storage facilities. The defendant denied the allegations and by way of a special defense alleged contributory negligence in that the plaintiff in the exercise of reasonable care should have discovered the defect and thus avoided it. At the conclusion of the plaintiff's case the defendant rested and moved for a directed verdict, which motion was denied. The jury returned a verdict for the plaintiff, and the defendant has appealed from the judgment rendered thereon. The defendant now claims that the trial court erred in denying its motion for a directed verdict, in denying its motion to set aside the verdict because it was contrary to law and against the evidence, and finally in refusing to render judgment notwithstanding the verdict.

"Our rule as to the direction of a verdict has remained unchanged although it has not always been expressed in identical phraseology. It is clearly and tersely stated in *Mott* v. *Hillman,* 133 Conn. 552, 555, . . . as follows: 'While the direction of a verdict is not favored, it is justified if upon the evidence the jury could not reasonably and legally have reached any other conclusion than that embodied in the verdict as rendered; . . . and if, had the verdict been rendered for the other party, the evidence was so weak that it would be proper for the court to set it aside. . . .' It remains to apply this rule to the evidence in this case, 'considered in that aspect most favorable to the plaintiff.'" *Lurier* v. *Danbury Bus Corporation,* 144 Conn. 544, 547; see *Sedita* v. *Steinberg,* 105 Conn. 1, 5.

If the evidence is so considered, the jury might have found the following facts: On November 8, 1962, the plaintiff moved into an apartment owned by the defendant and leased from it for a term of three years. The apartment included a small kitchen

in which there was a cabinet containing two sections attached to the wall and located over the stove. The plaintiff kept her chinaware in this cabinet. On the evening of November 3, 1963, the plaintiff, in preparation for entertaining the following day, was in the process of removing some of her chinaware from the upper section. At that time the upper section of the cabinet suddenly tilted forward, striking the plaintiff in the head and spilling chinaware on the floor, where it was broken. The plaintiff telephoned to the apartment superintendent, John M. Wanger, and he came to her apartment later that evening. Upon arrival, he found the cabinet tilted or hanging out from the wall at a 45-degree angle. He returned the next day and observed that the nails attaching the top of the cabinet had pulled out of the sheetrock wall into which they had been driven. The bottom part of the cabinet remained attached to the wall. He observed that the nails attaching the lower section of the cabinet were not in alignment with the nails in the upper section of the cabinet. This difference in the alignment of nails indicated to him that the nails attaching the upper section of the cabinet penetrated solely into the sheetrock while the nails in the lower section penetrated the sheetrock and then extended into studs in back of the sheetrock. While the nails attaching the upper part of the cabinet had pulled out of the sheetrock, the lower nails, though bent, remained embedded in the wall. The studs or wooden uprights were spaced approximately sixteen inches apart and used to support the sheetrock, which is a form of dry wall one-half inch thick. The cabinet was supported solely by the nails. Wanger reattached the cabinet to the wall by spacing the nails in the upper section so that they pierced the sheetrock and penetrated into the upright studs. Wanger was the apartment house superintendent at the commencement of the plain-

tiff's occupancy and he had never previously examined the cabinet, nor had the plaintiff ever made a complaint about the cabinet.

Perhaps it should be initially pointed out that no allegation appears in the plaintiff's pleadings setting forth that the defendant had either actual or constructive knowledge of the alleged defect and concealed it, or that the plaintiff could not have discovered it by reasonable inspection, nor do they disclose circumstances requiring the necessity of an inspection. However, the parties in their arguments and briefs contended that the rules of law laid down in *Masterson* v. *Atherton,* 149 Conn. 302, are controlling, and the case appears to have been tried on that theory. "Ordinarily, a tenant takes the demised premises as he finds them, and the landlord is not liable for defective conditions (that is, conditions making the premises not reasonably safe for the reasonably to be anticipated uses which the tenant would make of them) within the demised area." Id., 306; *Civale* v. *Meriden Housing Authority,* 150 Conn. 594, 596. This general rule has certain exceptions which modify the application of "caveat emptor" as it relates to defects existing at the beginning of the tenancy if such defects "(a) were not discoverable on reasonable inspection by the tenant, and (b) were defects with a knowledge of which the landlord was chargeable." *Masterson* v. *Atherton,* supra, 307. The burden is on the tenant to allege and prove the facts necessary to take his case out of the general rule of caveat emptor. Id., 306.

The defendant's first contention is that the plaintiff did not sustain her burden of showing that a defective condition existed at the commencement of her tenancy and that the defective condition, if it was such, continued to the time of the alleged accident. To recover, the plaintiff had the burden of showing, among other facts, that the defect existed

at the beginning of the tenancy. *Masterson* v. *Atherton,* supra, 307. There was evidence that the sole support of the cabinet consisted in its being nailed to the wall. There was evidence that no repair work had been done on the cabinet during the tenancy and that no complaint had been made by the plaintiff concerning the cabinet. Upon such evidence and the reasonable inferences to be drawn, the jury could reasonably determine that the method of attachment existing on November 3, 1963, was not of such a transitory nature that a lapse of time would have resulted in a material change from its condition at the commencement of the tenancy. *Johnson* v. *Charles William Palomba Co.,* 114 Conn. 108, 114; 20 Am. Jur., Evidence, § 719. A defect has been defined in Webster, New World Dictionary, as a "lack of something necessary for completeness; shortcoming." "A place or instrumentality is defective if it is not reasonably safe for a reasonably to be anticipated use." *Facey* v. *Merkle,* 146 Conn. 129, 136. Wanger's testimony was that upon observing, after the accident occurred, the cabinet and the manner in which it had been affixed to the wall, he immediately noticed that the nails attaching the upper section of the cabinet were out of alignment with the nails attaching the lower section to the wall. This indicated to him that the lower nails protruded through the dry wall and penetrated the studding supporting the wall. The lower section of the cabinet did not tilt forward as did the upper section, and the nails attaching the lower section, although bent, remained embedded in the sheetrock. While no expert evidence was offered on cabinet installation, the jury could reasonably have found that the cabinet was defectively installed.

The defendant contends that the defect, if any, could have been discovered by the plaintiff on reasonable inspection. If that was true and the evidence

was unassailable on that point, then clearly there could be no recovery. *Masterson* v. *Atherton,* supra, 307; *Shegda* v. *Hartford-Connecticut Trust Co.,* 131 Conn. 186, 191; *Seaman* v. *Henriques,* 139 Conn. 561, 567. It appears that the cabinet had been used by the plaintiff from the commencement of the lease, but no evidence was offered by her that she had inspected the cabinet or that a reasonable inspection would not have disclosed the defective condition. However, because of the nature of the installation, which was revealed only after the cabinet had become detached from the wall, it cannot be said that the jury could not have found that the plaintiff would not have discovered the defect on reasonable inspection. That being so, such circumstances would meet the first requisite of the *Masterson* case, supra, and also remove the question of contributory negligence.

The remaining error assigned by the defendant relates to its claim that the defect, if any, was of a latent nature and the plaintiff failed to offer evidence from which the jury could find that (1) the defendant had actual knowledge of the defect and (2) was chargeable with knowledge of the defect. There was no evidence that the defendant had actual knowledge of the defect. Thus, the serious question remaining is whether there was evidence from which the jury could find that the defendant was chargeable with knowledge of the defect as required by the *Masterson* case, supra. See *Gallagher* v. *Button,* 73 Conn. 172, 176; *Shegda* v. *Hartford-Connecticut Trust Co.,* supra, 192.

The defendant did not testify, and no evidence was offered that it had inspected the cabinet. Nor was there any evidence as to when or by whom the cabinet was installed. The circumstances here are to be distinguished from those in such cases as

*Reardon* v. *Shimelman,* 102 Conn. 383, 386, and *Vinci* v. *O'Neill,* 103 Conn. 647, 656, holding that where the lessor retains control of part of the property he has a duty to use reasonable care to keep such property reasonably safe. And that duty requires reasonable inspection. *Klahr* v. *Kostopoulos,* 138 Conn. 653, 655. In the instant case, the property was within the exclusive control of the lessee. But even in the cases where the defendant retains control of the property there must be evidence that a reasonable inspection of the property by the lessor would have disclosed the defect. "A failure to inspect on the part of the landlord is not in and of itself a ground of negligence but only has a place in the case upon the issue of knowledge or notice." *Nelson* v. *D'Agastino,* 135 Conn. 384, 387; *Vinci* v. *O'Neill,* supra, 657. The plaintiff testified she had no trouble with the cabinet and that when she moved into the apartment the premises appeared to be in good and satisfactory condition. While there was no evidence that she made an actual inspection of the cabinet, it has already been determined that the jury could properly find that a reasonable inspection, had one been made, would not have disclosed the defect. If the plaintiff contends, as indeed she must, that the evidence shows she could not have discovered the defect, how then can it be said that the same evidence supports a finding that the defendant could have discovered it? A landlord is held to no higher degree of diligence in this respect than is a lessee. 52 C.J.S., Landlord and Tenant, § 417 (f) (2), and cases cited. The defect came to light only after the cabinet became detached from the wall.

Where a landlord has information which would lead a reasonably prudent owner exercising due care to suspect that a dangerous condition existed on the premises at the time of leasing which would not be discoverable by the tenant on reasonable inspection,

then the landlord must at least disclose that information. *Johnson* v. *O'Brien,* 258 Minn. 502; *Cummings* v. *Prater,* 95 Ariz. 20; *Freitag* v. *Evenson,* 232 Ore. 225; 32 Am. Jur., Landlord and Tenant, § 671. The rule is expressed in much the same language in 1 Tiffany, Landlord and Tenant § 86. The great weight of authority also holds that in the absence of such information or some other reason suggesting a possible defect, the landlord is under no affirmative obligation to inspect premises prior to the leasing. *Spires* v. *Fitzsimmons,* 106 Ga. App. 22; *Newman* v. *Sears, Roebuck & Co.,* 77 N.D. 466; *Bolieau* v. *Traiser,* 253 Mass. 346; 32 Am. Jur., Landlord and Tenant, § 672; see also *Newell* v. *Weisman,* 113 Conn. 744, 746; Prosser, Torts (3d Ed.) § 63. Tennessee, however, takes a contrary view. 32 Am. Jur., Landlord and Tenant, § 673. In the instant case there was no evidence, as was present in cases such as *Clark* v. *George B. Wuestefeld Co.,* 132 Conn. 653, 655, *Klahr* v. *Kostopoulos,* supra, 653, and *Dombroski* v. *Abrams,* 116 Conn. 454, 456,[1] which would warrant the jury in finding that the defendant had information or was otherwise put upon such notice as would lead a reasonably prudent owner, exercising due care, to suspect that a possible defect existed on the premises, and thus was chargeable with knowledge of the defect. The verdict was not supported by adequate evidence on the basis of negligence by the defendant. In this respect it failed to satisfy the requirements of the *Masterson* case, supra.

In summary, the evidence requisite for a recovery was lacking. The verdict, being without support in the evidence, should have been set aside. Section 255 of the Practice Book provides in part that "[i]f

---

[1] While these cases involve situations in which the lessor retained control of the premises, they demonstrate the necessity of notice where actual knowledge is not established.

a verdict was returned the court may allow the judgment to stand or may set the verdict aside and either order a new trial or direct the entry of judgment as if the requested verdict had been directed." Thus, the question is whether, had the trial court set aside the verdict as it should have done, it would have been an abuse of discretion for it to order a new trial rather than to render judgment for the defendant. This problem was present in *Masterson* v. *Atherton,* supra, 316, and there the court said: "Once it is clear, as it is here, that the verdict is without support in the evidence and should have been set aside, the question whether we should merely order the verdict set aside, thus permitting a new trial, or should order the trial court to take the next step and render judgment for the defendant depends on whether the trial court, in its discretion, could have found that 'circumstances for which a party is not at fault have resulted in his failure to present the evidence which is lacking in his case and . . . that the necessary evidence will in reasonable probability be available on a retrial.'" There is nothing to indicate that such conditions exist here, and consequently no justification appears for permitting a new trial.

There is error, the judgment is set aside and the case is remanded with direction to render judgment for the defendant in accordance with its motion for a directed verdict.

In this opinion KOSICKI and JACOBS, Js., concurred.