THE CITY OF WATERBURY *vs.* THE CONNECTICUT RAILWAY AND LIGHTING COMPANY ET ALS.

*First Judicial District, Hartford, May Term, 1912.

HALL, C. J., PRENTICE, THAYER, RORABACK and WHEELER, Js.

A plaintiff who seeks to enforce an obligation dependent upon conditions precedent, must allege the existence or fulfillment of such conditions in his complaint; otherwise it will be demurrable for such omission.

In the present action the plaintiff city, which sought an accounting and a recovery of the amount found due thereon, alleged that one of the defendants—to whose rights and obligations the other defendants had succeeded—had undertaken the electrification of its horse railroad in Waterbury, and in connection therewith had agreed with the city to pay over to it, annually, a certain amount, when and after its net earnings exceeded the sum of six per cent. "on the capital actually invested in said company, in stocks and bonds, or both." *Held:*—

1. That the existence or fulfillment of this condition was essential to the plaintiff's cause of action, and therefore must be alleged in its complaint; and that an averment to the effect that the net earnings exceeded six per cent. on the capital actually invested "by said company for construction and equipment of its railway lines," did not meet the situation, since the condition agreed upon as a basis for the six per cent. computation related to the contribution made by the stock and bond holders *to* the company, while its alleged satisfaction had reference to an expenditure *by* the company, and limited even that to items for construction and equipment.

* Transferred from third judicial district.

2. That inasmuch as the complaint had failed to state a cause of action, certain allegations therein charging the defendants with stock watering, manipulation of their books, and misrepresentation of their investments, earnings and expenses, were immaterial.

Argued May 16th—decided October 16th, 1912.

ACTION to recover payments alleged to have become due from the defendants to the plaintiff city by reason of an obligation imposed upon the defendants by a vote of the city authorities, in connection with the electrification of the street-railway lines of the Waterbury Traction Company, or contractually assumed by said company as an incident of such electrification, brought to the Superior Court in New Haven County, where a demurrer to the substituted complaint was sustained and judgment rendered for the defendants (*Holcomb, J.*), from which the plaintiff appealed. *No error.*

One of the defendants, the Waterbury Traction Company, also appealed from an interlocutory decision.

The substituted complaint sets out in substance the following among other facts:—

The Waterbury Horse Railroad Company was organized in 1888 to operate a horse railway in certain streets in Waterbury, under a charter granted in 1884 and amended in 1886. In 1893 its name was, by the General Assembly, changed to the Waterbury Traction Company, and permission given to it to operate in additional streets and to use electricity or other motive power except steam. It thereupon, acting under authority of § 2 of chapter 169 of the Public Acts of 1893 (p. 308), caused a plan for the proposed electrification of its lines to be made and presented to the mayor and court of common council of the plaintiff city for approval. The city authorities voted that authority to change the motive power from horse to electricity be given, but incorporated in its vote certain other

requirements. Among these was one that the company should pay the city not less than two per cent. of its gross receipts after January 1st, 1900. The directors of the company thereupon objected, and asked for a modification of the conditions imposed. A conference between committees of the court of common council and the company was thereupon had, and terms agreed upon. These terms were reduced to writing in the form of a report to the court of common council by its committee, signed by its members, and endorsed "accepted" under the name of the company acting by its secretary. The court of common council upon the receipt of this report changed its previous action to conform thereto.

The vote as thus amended contained, among others, the following provisions: "6. That said company shall indemnify and save harmless the said city from all loss, cost, damage or expense of every kind, nature or description by reason of the operation of its cars in the streets of said city or arising or growing out of the use of electricity as a motive power. . . . 8. That said Waterbury Traction Company shall pay to the city of Waterbury, for the use of said city, in the month of January in each year a sum not exceeding two per cent of its gross receipts, to be determined as follows: The gross receipts for the purpose aforesaid, consist of all fares not exceeding five cents (and five cents of each and every fare exceeding five cents) and the city of Waterbury at some time during the month of January in each year shall examine the books of said company and thus ascertain and determine such gross receipts. When and after such time as the net earnings of said company shall exceed the sum of six per cent on the capital actually invested in said company, in stocks or bonds, or both, said company shall pay to said city such excess to the amount of two

per cent in the same manner aforesaid. If at any time hereafter the statute laws of this State shall make said company liable to local taxation, the provisions of this section shall be null and void during such time as said company shall be liable to local taxation, and no part of said receipts shall be paid to said city during such time by reason of anything herein contained."

All the parties concerned understood, and it was agreed between them, that the words "net earnings," as used in the report and vote, meant gross earnings less operating expenses and cost of maintenance and repairs.

Immediately upon the passage of this vote the Traction Company proceeded to change the motive power upon its lines from horses to electricity, and electricity has ever since been in use.

December 22d, 1900, the Traction Company sold and transferred all its property and franchises to the Connecticut Lighting and Power Company, and thereupon ceased to operate street-railway lines in the plaintiff city. As a part of the consideration of the sale and transfer the vendee assumed and agreed to pay all that was or might become due from the vendor to the plaintiff and others, and undertook to perform all the contracts of the latter. The name of the vendee was thereupon and within a few days changed by an order of court to The Connecticut Railway and Lighting Company, and the charter of the company amended by the General Assembly. By one provision of this amendment the company was required to do that which it had contracted to do as above stated.

At about the same time, the corporation last named purchased all the property and franchises of several other street-railway and lighting companies, located and doing business outside of Waterbury, thereby

creating a large system, and has ever since continued to be the owner thereof. Until December 20th, 1906, it operated the street-railway lines which had belonged to the Traction Company, and carried on the business of the other corporations acquired as aforesaid. It was thus engaged when the action was begun.

December 20th, 1906, the Connecticut Railway and Lighting Company leased all the property and franchises which it had purchased, as stated, to the Consolidated Railway Company, and this latter company, under authority of its charter, operated all of said street-railway and lighting properties as lessee thereof until June 1st, 1907. On that date the last-named corporation became merged in the New York, New Haven and Hartford Railroad Company. Since this merger the latter company has operated these properties under the terms of the lease to the Consolidated Railway Company. The companies operating under the lease from the Connecticut Railway and Lighting Company have taken all the earnings and accounted to the lessor pursuant to the terms of the lease.

During the time the Waterbury lines were operated by the Traction Company, "the net earnings of said company exceeded six per cent on the capital actually invested by said company for construction and equipment of its railway lines," and such excess annually amounted to more than two per cent. of the gross receipts from fares not exceeding five cents, and five cents of each fare exceeding five cents. During the subsequent period covered by the operation of these lines by the Connecticut Lighting and Power Company under its original or changed name, which ended December 20th, 1906, the net earnings from said Traction Company's properties were "more than sufficient to pay the plaintiff two per cent annually of the gross earnings from passenger traffic after paying a dividend

of six per cent on the capital actually invested for construction and equipment." Ever since the Traction Company's lines were electrified, "the net earnings of said traction company and its successors have exceeded six per cent on the capital actually invested by said company and its successors for construction and equipment by more than sufficient to pay the plaintiff out of such excess two per cent of the gross receipts of said traction company and by its successors from passenger earnings on the properties which belonged to said traction company."

The plaintiff asks for the ascertainment and determination of (1) the amount actually invested in the construction and equipment of the Traction Company's properties, and (2) the annual gross earnings of said properties, during the period covered by the complaint, from five cent fares and five cents of every fare exceeding five cents, for an accounting as provided in § 951 of the General Statutes for "all the earnings of said traction company's property, the cost of construction and equipment thereof, and the expense of operating and equipment of its lines," and for a judgment to recover two per cent. of the annual gross earnings as ascertained.

The complaint contains extended allegations touching the capitalization, bond issues and financial operations of the several corporations, and the manner in which the several properties referred to have been managed, the receipts therefrom handled and expended, and the accounts in relation thereto kept. These charge that the Traction Company, during the period between the passage of the vote and its sale of its lines, was guilty of stock watering, issuing bonds not representing capital actually invested, the appropriation of income to the payment of the cost of construction and equipment within and without the city, bookkeeping manipu-

lation, and misrepresentation to the public as to its investment, earnings, and expenses, all calculated and designed to hinder and prevent a recovery by the plaintiff under the terms of the vote. They also charge that the corporations which have been the successive owners and operators of the Traction Company's lines since December 22d, 1900, have, for the fraudulent purpose of depriving the plaintiff of its rights under the vote, used the earnings of the lines which had belonged to the Traction Company to pay for the cost of construction and equipment of other portions of their system, and in their financial management and bookkeeping so commingled and confused these earnings with those from other sources as to make it difficult to discover the true situation. As these matters do not enter into the discussion of the opinion they need not be recited in detail.

The action was begun February 23d, 1906, against the Connecticut Railway and Lighting Company as the sole defendant. Some three years later a substituted complaint was filed and the Waterbury Traction Company, the New York, New Haven and Hartford Railroad Company, and two other corporations incidentally involved, were cited in as defendants. This substituted complaint continues to date the story of matters deemed to be relevant to the subject-matter of the action.

*John O'Neill* and *John P. Kellogg*, with whom was *Francis P. Guilfoile*, for the appellant (plaintiff).

*George D. Watrous* and *William B. Boardman*, for the appellees and the Waterbury Traction Company appellant (defendants).

PRENTICE, J. The plaintiff's appeal presents three general subjects of complaint. Two relate to incidental matters arising during the progress of the cause. The

third touches more substantial questions resulting from the court's action in sustaining a demurrer to the complaint. This demurrer assigned a considerable number of reasons. The major portion of them attacked the sufficiency of those averments which undertook to establish the existence of an obligation binding upon the defendants. The court sustained this contention and the demurrer for these reasons. The subject of this ruling has occupied a large share of the attention of counsel in argument. We have no occasion to enter upon a consideration of the important questions which this phase of the case involves, since there appears at the very threshold of it another reason, pointed out in the demurrer, which is fatal to the plaintiff's recovery upon the complaint as framed.

The plaintiff rests its right of action upon a provision contained in a vote of its court of common council approving a plan for the electrification of the street-railway lines of the Waterbury Traction Company, which vote was passed upon an application presented by the company pursuant to § 2 of chapter 169 of the Public Acts of 1893 (p. 308), and also upon an agreement of the same tenor claimed to have been made by the company in connection with the passage of such vote, together with the conduct of the company in availing itself of the permit which the vote embodied. It is not asserted that the company came under any duty to make payments to the city based upon income, other than such a duty as the language of that vote expresses.

The action is brought to recover amounts which it is claimed became due annually for several years prior to the commencement of the action, in accordance with the terms of this vote. It will be noted that these terms, in addition to an attempt to state a rule for the determination of the amounts of the several payments, provide (1) a condition precedent to payments becom-

ing due, and (2) a limitation of the amount to be paid under certain conditions of the net revenue account. The condition precedent is that the annual payments shall not be required except "when and after such time as the net earnings of said company shall exceed the sum of six per cent on the capital actually invested in said company, in stock or bonds, or both."

The pleader having in his complaint made known the existence of this condition, was bound to show that it had been satisfied. The plaintiff is in no position to claim redress unless the net earnings did, during some portion of the period covered by the complaint, pass the mark set by the vote, and in no position to invoke judicial intervention unless it claims that such was the fact. It matters not what dark and devious ways the defendants may have trodden in an unlawful effort to defeat the plaintiff of its rights, if there has been no such defeat. The latter can establish no claim to judicial intervention or relief by merely charging fraudulent conduct. It must show that by such conduct it has been deprived of something to which it was in fact and in truth entitled. In this case it is entitled to nothing unless the net earnings have passed a certain figure. Until it is charged that such has, upon an honest and true accounting, been the case, the plaintiff has acquired no standing in court to ask it to enter upon the inquiry and make the accounting asked for.

The pleader understood his duty in this regard, and we find three allegations, two covering separate periods, and one the entire period, since electrification, which were inserted to meet the requirements of the situation. They vary slightly in form, but all unmistakably indicate the pleader's intention to limit the fund upon which the six per cent. computation was to be made, to the actual investment, for the time being, by the several owning or operating companies, for construction

and equipment. The first of these allegations, which deals with the period of the Traction Company's ownership, is that "the net earnings of said company exceeded six per cent on the capital actually invested by said company for construction and equipment of its railway lines." The second allegation, which relates to a later period, differs in substance only in that the words "by said company" do not appear between "capital actually invested" and "for construction and equipment." The qualification of the investment as that "by" the company is here not expressed; but it is necessarily implied from the context. In the third averment the pleader returns to his former use of language, and the investment is expressed to be one by the companies and "for construction and equipment."

It is apparent from an examination of these repeated averments, and of the prayers for relief, that they were not inadvertently, but intentionally, made in the form in which they appear. The pleader has given to the terms of the vote expressive of the obligation claimed to have been imposed upon the Traction Company, a construction which placed upon it the duty to make the prescribed annual payments whenever its net earnings should exceed the sum of six per cent. on the capital actually invested "by" it "in the construction and equipment of its lines." Unless this construction is justified, the complaint fails to state a cause of action, since it is not shown that a situation has ever arisen when a payment was required. We are in form dealing with a question of pleading; but it requires only a little study of the plaintiff's allegations to discover that we are in fact here brought to a consideration of one of the fundamental propositions of the case the plaintiff has chosen to present, to wit: one as to the scope and character of the obligation claimed to rest upon the defendants in its favor.

By the terms of the vote the six per cent. computation is to be made upon the actual investment "in said company, in stocks or bonds, or both." This unmistakably refers to the contribution to the company which the stockholders, or stock and bond holders, have made. The construction which the pleader has placed upon it transforms this investment into one by the company, that is, expenditure,—a radically different thing. And it is not made the equivalent of the contribution to the company by the stock and bond holders, by its limitation to expenditure for construction and equipment. It is clear from the context that the pleader had no thought that it was, and it is not. It is a matter of common knowledge that the capital invested in a street-railway enterprise not only may be, but ordinarily is, used in other legitimate ways and for other legitimate purposes than these. There are organization and preliminary expenses to be borne, rights of way to be acquired, property perhaps to be purchased, working capital to be supplied, and no inconsiderable incidental charges to be taken care of. All these things, as well as construction and equipment, enter into the burden for the bearing of which capital must be provided and used. The language of the vote in important particulars leaves much to be desired in the matter of certainty and precision, and this unfortunate feature is not lacking at the point we are discussing. But however uncertain it may be, it must be said of it that it is by no possibility susceptible of a construction which calls for the six per cent. computation to be made upon the basis of the cost to the company of the construction and equipment of its lines.

There is no error.

In this opinion HALL, C. J., and THAYER, J., concurred; RORABACK and WHEELER, Js., dissented,