GEORGE KOWINKO *v.* JOSEPH SALECKY ET AL.

APPELLATE DIVISION OF THE CIRCUIT COURT

FILE No. CV 14-635-4602

Argued March 24—decided August 8, 1969

*John M. Fitzgerald,* of Hartford, for the appellants (defendants).

*Waldemar J. Lach,* of Hartford, with whom, on the brief, was *Lloyd Frauenglass,* of Hartford, for the appellee (plaintiff).

DEARINGTON, J. In his amended complaint the plaintiff alleged that he was a tenant of the defendants and the defendants had permitted a defective storm sash and a defective storm window to remain on the demised premises which they knew of, or in

the exercise of a reasonable inspection would have discovered, and that they failed to take precautionary measures to save the plaintiff from harm or to notify the plaintiff of the danger and had further, at the time of the letting, represented that the equipment furnished the plaintiff was in proper working condition when in fact it was not. Aside from the tenancy the defendants denied the allegations and by way of a special defense alleged that the plaintiff's negligence proximately caused the alleged injuries. In their appeal the defendants assign errors in the denial of their motions for a directed verdict, for judgment notwithstanding the verdict, and to set aside the verdict. Further error is claimed in the denial of their motion to correct the finding and also in the court's charge.

We first consider the assignments of error directed to the finding. It has been pointed out on many occasions that a finding in a jury trial is not a statement of facts a trial court has found proven but a narration of the facts claimed to have been proven by the parties, made for the purpose of presenting any claimed errors in the charge. "It serves no useful purpose to seek corrections in the finding as regards nonessential details or facts which do not serve to make clearer the situation as related to the claimed errors." *Voronelis* v. *White Line Bus Corporation,* 123 Conn. 25, 27; Practice Book §§ 957, 999. The "claimed errors" in a finding under the procedure in the Circuit Court relate solely to errors in the charge. In the case before us the finding, as made, sufficiently presents the determinative issue as it relates to the charge and we have no need to consider the corrections sought.

We first review the question of the denial of the motion for a directed verdict and if such a motion would have been proper and, if this requires an affirmative answer, we then come to the question

whether the court erred in refusing to render judgment for the defendants notwithstanding the verdict. *Hemmings* v. *Weinstein,* 151 Conn. 502, 503. Directed verdicts are not favored and should be granted only when the jury could not reasonably and legally reach any other conclusion. *Console* v. *Nickou,* 156 Conn. 268, 270; *Johnson* v. *Consolidated Industries, Inc.,* 153 Conn. 522, 524. In reviewing the evidence, we give it the most favorable construction in support of the verdict of which it is reasonably capable. *Console* v. *Nickou,* supra; *Hemmings* v. *Weinstein,* supra, 504.

The following facts are either undisputed or could reasonably have been found by the jury to have been established. The defendants owned a three-family house in the city of Hartford and they resided on the first floor. The plaintiff visited the property and entered into a parol lease from month to month on the assurance of the defendants that they would attend to necessary repairs. The defendants retained a key to the plaintiff's apartment for the purpose of making sure the apartment was kept in good condition. The plaintiff moved in around April 6, 1962, and occupied the premises. On April 10, while washing a window, he was injured when a sash cord on an interior window broke, resulting in the falling of the window and also an outside aluminum storm window, each of which caused injury to the plaintiff's hands. The plaintiff had been cleaning the window for some fifteen minutes and had observed nothing wrong with either window, nor did he observe any defective condition in the sash cord. After the accident the cord was found to be old, brown and frayed at the point of severance. Shortly after the accident, Mrs. Salecky appeared and examined the window and then said, "Okay, I fix, pay doctor and I fix everything." The defendants later repaired the window.

"At common law as a general rule, the landlord is under no implied obligation or liability to the tenant for personal injuries due to the defective condition of the demised premises or the lack of repair of defects therein where the landlord has not made any warranty or contract relative to the condition of the demised premises or the repair of defects." *Panaroni* v. *Johnson,* 158 Conn. 92, 97. In *Masterson* v. *Atherton,* 149 Conn. 302, 306, the general rule is carefully analyzed, and it is noted that there are certain exceptions or at least apparent exceptions in that the general rule does not apply to defects existing at the beginning of the tenancy if they "(a) were not discoverable on reasonable inspection by the tenant, and (b) were defects with a knowledge of which the landlord was chargeable." Id., 307, citing *Shegda* v. *Hartford-Connecticut Trust Co.,* 131 Conn. 186, 191. The burden is on the tenant to allege and prove the facts necessary to establish that he is within one or more of the exceptions in order to take his case out of the general rule of "caveat emptor." *Masterson* v. *Atherton,* supra, 307.

In the instant case, it appears that the plaintiff sought recovery under the general rule as well as on the theory that the defendants had retained a limited control of the premises for the purpose of making repairs by reason of an agreement entered into by the parties at the time of the leasing. While the latter theory was not specifically alleged in the complaint, it appears that it became the dominant issue. The complaint, as drawn, was very likely open to a motion for an amendment when the variance became apparent. Practice Book § 134. Lacking this, however, the case was tried upon its merits without objection by the defendants. *Jordan* v. *Apter,* 93 Conn. 302, 304.

Under the general rule as set forth in *Masterson* v. *Atherton,* supra, 307, if the plaintiff was to succeed it was incumbent upon him to prove initially that the defect was in existence at the beginning of the tenancy. The jury were entitled to draw a permissive inference that the defect was not of such a transitory nature that a lapse of time from the beginning of the tenancy to the time of injury (four days) resulted in any material change in the cord's condition. *Johnson* v. *Charles William Palomba Co.,* 114 Conn. 108, 114. The plaintiff also had the burden of proving, under *Masterson,* that the defect was not discoverable on reasonable inspection by the tenant and was a defect with a knowledge of which the landlord was chargeable. *Seaman* v. *Henriques,* 139 Conn. 561, 567; *DesMarchais* v. *Daly,* 135 Conn. 623, 626; *Shegda* v. *Hartford-Connecticut Trust Co.,* supra. Actual knowledge of a defect, by the tenant, is fatal to his case. *Masterson* v. *Atherton,* supra.

There was no evidence from which the jury could find that the defendants had actual knowledge of the defect. The evidence relating to the defective condition arose solely from the observation made by the plaintiff and his wife after the accident. The plaintiff testified that the cord, after having broken, appeared to be old and brown in color and at the point of severance looked like "old rags," although he had seen nothing wrong with the cord before it had broken. The wife of the plaintiff testified that she looked at the window after the accident and "saw a small piece of torn cord in the upper part of the frame." The next day she examined it more closely and it "was brown, sort of frayed with sort of rust coloring in it." Since under the general rule a landlord is not obligated to inspect the premises per se and since there was no evidence from which the jury could reasonably conclude that the defect was one "with a knowledge of which the landlord was charge-

able," as required, the rule of "caveat emptor" applied, and thus, the cause of action could not be supported under this theory of the plaintiff's case. *Shegda* v. *Hartford-Connecticut Trust Co.*, supra, 192.

We now consider the claim for recovery on the theory that the defendants agreed to keep the premises in repair and for that purpose retained a limited control of the premises. It is significant that the plaintiff's offer of proof relating to retention of control was not challenged. The burden of proving retention of control, which would remove the case from the general rule, was upon the plaintiff. *Masterson* v. *Atherton*, 149 Conn. 302, 309; *Martel* v. *Malone*, 138 Conn. 385, 388. Repairs made by a landlord voluntarily, without special circumstances, will not in themselves support a finding of an agreement to repair. *Palimas* v. *Aress Realty Co.*, 130 Conn. 687, 692. And it "is true that ordinarily there can be no recovery of damages for negligence based upon a promise to make repairs within a rented tenement unless the landlord has notice of the defect." *Chipman* v. *National Savings Bank*, 128 Conn. 493, 498; *Rumberg* v. *Cutler*, 86 Conn. 8, 10. In the instant case, however, there was evidence tending to show, and the jury could reasonably find, that the defendants had entered into a contemporaneous oral agreement, as part of the consideration of the rental, in which they agreed to keep the property in repair and for that purpose had retained a key to the premises. Corroborative of such an agreement was the further evidence that the defendants had repaired the defective condition after the accident. *Panaroni* v. *Johnson*, 158 Conn. 92, 99; *Dean* v. *Hershowitz*, 119 Conn. 398, 415.

When a landlord retains control of the premises for the purpose of keeping them in repair he must

exercise reasonable care through inspection to keep the premises in a reasonably safe condition. *Nelson v. D'Agastino,* 135 Conn. 384, 386; *Scibek v. O'Connell,* 131 Conn. 557, 559; *Aprile v. Colonial Trust Co.,* 118 Conn. 573, 580. "The primary duty of the landlord is to use reasonable care to see that the premises are kept reasonably safe, and his liability can only arise out of a failure in that duty. *Reardon v. Shimelman,* 102 Conn. 383, 386 . . . . To give rise to it, however, it must appear that he either knew of a defect or was chargeable with notice of it, because had he exercised a reasonable inspection of the premises, he would have known of it. *Reardon v. Shimelman,* supra, p. 389. In this sense only can it be truly said that the landlord is under a duty to inspect the premises, and a failure to inspect them cannot give rise in itself to a liability for injuries resulting from a defective condition. Evidence as to an inspection of the premises by him has its place in the case as bearing upon the issue of actual knowledge of their condition." *Vinci v. O'Neill,* 103 Conn. 647, 657; see *Laflin v. Lomas & Nettleton Co.,* 127 Conn. 61, 64; *Reynolds v. Land Mortgage & Title Co.,* 114 Conn. 447, 451. Thus, "[i]f the landlord does not make a reasonable inspection, that fact becomes important if he would have had notice of the defect if he had made such an inspection." *Nelson v. D'Agastino,* supra, 387. The duty of the landlord in this respect is not absolute, he is not a guarantor. *Gallagher v. Button,* 73 Conn. 172, 174. Of course, an agreement to make a specific repair within a tenement imports knowledge that repairs are necessary, and no further notice is required. *Scibek v. O'Connell,* supra, 560.

To establish liability under this theory, it would not be enough to show that the defendants had or ought to have had knowledge that the windows were generally in a bad condition, although such knowl-

edge was relevant on the amount of care they were bound to use in inspecting the windows for particular defects. The burden was on the plaintiff to prove that the defendants knew or ought to have known of the defect which caused the accident and ought to have taken steps to prevent the breaking of the cord at that particular place. *Fogarty* v. *M. J. Beuchler & Sons, Inc.*, 124 Conn. 325, 329. It has been determined that there was no evidence from which the jury could find that the defendants had actual knowledge of the defect; thus the real question at this posture of the case is whether there was evidence from which the jury could reasonably conclude that had the defendants made a reasonable inspection of the window, the defective condition would have been discovered; that is, could constructive notice be inferred from a failure to make a reasonable inspection, which, had it been made, would have resulted in the discovery of the defective condition?

There was no evidence that the cord broke because of a latent defect or because of a condition that suddenly came into existence. The cord, when examined by the plaintiff and his wife following the accident, was observed by them to be "old," "brown in color" and, at the point of severance, like "old rags." "It was brown, sort of frayed with sort of rust coloring in it." From such evidence the jury could reasonably conclude, on the basis of common knowledge, that the cord had gradually deteriorated and been rendered weak because of time and wear, and that the condition had existed for a sufficient length of time to charge the defendants with constructive notice of it. *White* v. *E & F Construction Co.*, 151 Conn. 110, 114. The jury could reasonably have found that by a reasonable inspection the defendants would have learned of the defective condition and that such an inspection would have imposed on them a duty to investigate the matter further.

*Wenisch* v. *Wetherall,* 109 Conn. 735, 736. The court committed no error in permitting the case to go to the jury and in denying the motion to set the verdict aside on this theory of the plaintiff's cause of action.

The defendants in their special defense have alleged contributory negligence on the part of the plaintiff. If the plaintiff's own negligence proximately contributed to his injuries he may not recover. *Pavlovchik* v. *Lupariello, 101* Conn. 567, 574; 32 Am. Jur., Landlord and Tenant, § 726. There was no evidence that the plaintiff had knowledge of the defective cord, in fact he had occupied the premises for only four days. As to materiality of the element of time as a factor bearing on opportunity to observe a defect, see *Gallagher* v. *Button,* 73 Conn. 172, 178. Nothing is alleged as to the plaintiff's knowledge of the particular defect causing the accident, nor as to his comprehension of the risk of injury from it. "Risks are not assumed by a plaintiff unless he has, or ought to have, knowledge and comprehension of the peril to which he is exposed, and, having such knowledge and comprehension, he continues of his own volition to subject himself to that peril. . . . The test is comprehension of the risk. 'Did he comprehend these things and their significance as affecting his safety? If not, he did not comprehend the risk to which he was exposed. . . .' Whether there was such a comprehension is ordinarily a question of fact. 'A fact of this character depends, as a rule, upon the existence of many other facts and the proper inference to be drawn from them, and is ordinarily a question of fact or one of mixed law and fact, and does not become a question of law unless the only logical and reasonable conclusion to be drawn from the evidence is that the plaintiff with knowledge and appreciation of the risk voluntarily encountered it.' " *Dean*

v. *Hershowitz,* 119 Conn. 398, 412, 413. Whether the plaintiff was in the exercise of due care presented a question of fact on which reasoning minds might reasonably differ. *Bader* v. *United Orthodox Synagogue,* 148 Conn. 449, 455; *Lurier* v. *Danbury Bus Corporation,* 144 Conn. 544, 546; *L'Heureux* v. *Hurley,* 117 Conn. 347, 359. A verdict should be directed only when, on the evidence, the jury could not reasonably and legally reach any other conclusion than that embodied in the verdict as rendered. *Bernardo* v. *Hoffman,* 109 Conn. 158, 159. The jury could have reasonably concluded, on the evidence, that the plaintiff did not have a comprehension of the peril to which he was exposed. This being so, the court did not err in denying the defendants' motion for a directed verdict and their motion to set aside the verdict.

The defendants took exception to a part of the charge on the ground that the complaint did not set out a cause of action and the court erred in instructing the jury that the plaintiff could recover if either allegation was proven. Specifically, the defendants in their exception following the charge stated to the court that the "first two allegations are insufficient to have the defendants found liable in this case. . . . You see, if he were to prove A or B, that in itself would not have furnished a complete basis of liability." The burden rests on the plaintiff to allege a recognizable cause of action. *Lombardi* v. *J. A. Bergren Dairy Farms, Inc.,* 153 Conn. 19, 22. " 'Such a requirement has its basis in two principles inherent in our procedure: The first is that in any action the complainant is required to set forth facts upon the basis of which, if true, he may be able to establish in law a right to relief, for, unless that is done, the pleading is demurrable; *Waterbury* v. *Connecticut Ry. & Lighting Co.,* 86 Conn. 180 . . . ; and the second requirement is that a pleading must

fairly apprise the court and adverse party of the claims to be made. *Volpe* v. *Gunder,* 129 Conn. 14, 17 . . . .' *Zamatha* v. *Harak,* 134 Conn. 480, 483." *Rossignol* v. *Danbury School of Aeronautics, Inc.,* 154 Conn. 549, 558.

The allegations set forth defectiveness in both an interior window and a storm sash in that the former had a defective pulley rope and the latter was loose; that the defendants permitted such conditions on the premises where they were likely to cause injury, that the defendants knew of such conditions or in the exercise of reasonable inspection would have known of them and failed to warn the plaintiff of the dangerous conditions; and that at the time of the letting the defendants represented that the equipment furnished was in proper working condition. The complaint, we have noted, was not drawn with desired specificity in that it did not fully set forth the theory of recovery on the ground of a limited reservation of control by the defendants for the purpose of keeping the premises in repair. In this respect it was very likely open to an amendment; Practice Book § 130; but, lacking this, the general statements were a sufficient foundation for evidence of the claimed negligence, and such allegations would not render void a judgment based on them where the case had been tried on its merits without objection or protest. *Taylor* v. *Lounsbury-Soule Co.,* 106 Conn. 41, 49. "Such a defect of form in the statement of . . . [a] cause of action is not one which can be taken advantage of after issue joined and a trial of the case upon its merits." *Duvall* v. *Birden,* 124 Conn. 43, 47; *Corden* v. *Zoning Board of Appeals,* 131 Conn. 654, 656. Furthermore, if the theory of limited retention of control be treated as a variance, that variance was waived since there was no error claimed in the admission of evidence on the subject. *State* v. *Rafanello,* 151 Conn.

453, 456; *Rose* v. *Van Bosch,* 119 Conn. 514, 518. Moreover, the plaintiff's claims of proof on the retention of control theory were not challenged, nor was the charge attacked as it related to this phase of the case. Where there are two or more grounds of recovery claimed, if the charge and rulings are correct on any count or ground of recovery sought, it will be presumed that damages were assessed as to that count or ground of recovery and the general verdict will be sustained. *Mercier* v. *Naugatuck Fuel Co.,* 139 Conn. 521, 525; *Sheeler* v. *Waterbury,* 138 Conn. 111, 114.

There is no error.

In this opinion DiCENZO and JACOBS, Js., concurred.