**PRODIGY SERVICES CO.,**
**Plaintiff–Appellant,**

**v.**

**SOUTH BROAD ASSOCIATES,** Devcon Enterprises, Cenvest, Inc., and Fosdick Corporation, Defendants–Appellees.

No. 1422, Docket No. 94–9096.

United States Court of Appeals,
Second Circuit.

Argued May 31, 1995.

Decided Aug. 21, 1995.

Elaine M. Rinaldi, Cozen & O'Connor, Philadelphia, PA (Stuart G. Blackburn, Blackburn & Sistare, Windsor Locks, CT), for plaintiff-appellant.

Kevin M. Tepas, Cotter, Cotter & Sohon, Bridgeport, CT, for defendants-appellees.

Before: MESKILL, McLAUGHLIN and LAY,* Circuit Judges.

LAY, Circuit Judge:

The district court granted summary judgment to the building owner, South Broad Associates, and the building manager, Dev-

con Enterprises, in this diversity action brought by Prodigy Services Company for property damage sustained when a water or steam pipe in the ceiling of the building ruptured in April 1989. Prodigy had stored computer equipment in the building pursuant to a business agreement with a tenant, Fosdick Corporation.

Prodigy filed suit against South Broad, Devcon, Fosdick, and Cenvist, Inc., claiming they were negligent in maintaining and repairing the pipes in the building.[1] The district court granted summary judgment in favor of South Broad and Devcon, finding Connecticut law would not support a claim for *property* damage, as opposed to personal injury, against those parties under the facts as alleged. We find this holding contrary to Connecticut law. We also find that a genuine issue of material fact remains as to whether South Broad and Devcon were negligent and may be liable to Prodigy, and we reverse.

## DISCUSSION

Under Connecticut law, it is well settled that when a landlord maintains control of any portion of a rented building, the landlord owes "the duty to take reasonable care to keep that portion reasonably safe."[2] *Smith v. Housing Auth.*, 144 Conn. 13, 127 A.2d 45, 47 (1956). Connecticut courts have defined "control" as "the power or authority to manage, superintend, direct or oversee." *Panaroni v. Johnson*, 158 Conn. 92, 256 A.2d 246, 251 (1969).

 When a landlord agrees to make repairs in a portion of the rented premises and has the right to inspect the premises for defects, he may have retained control of that

---

* Honorable Donald P. Lay, United States Circuit Judge for the Eighth Circuit, sitting by designation.

1. Devcon and Cenvist, Inc. are general partners of South Broad. Cenvist has been voluntarily dismissed from this action. Prodigy has settled with Fosdick, and South Broad and Devcon are the only remaining defendants.

2. Prodigy also argues South Broad and Devcon may be held liable under the so-called "public use doctrine." That doctrine provides that a landlord may be liable to a business invitee if the

landlord knows or should know of a defective condition on the property that existed at the time the lessee takes possession, and the land is leased for purposes involving the admission of the general public. *See* Restatement (Second) of Torts § 359 (1965). That exception is inapplicable in this case because there is no evidence that the defect (the leaking pipe) existed when Fosdick took possession of the property in 1982, and because the building was used as a warehouse and was not open to the general public.

portion of the premises for the purpose of making repairs. *See Masterson v. Atherton,* 149 Conn. 302, 179 A.2d 592, 596 (Conn.1962); *Smith,* 127 A.2d at 48; Restatement (Second) of Torts § 357 (1965); W. Page Keeton et al., Prosser and Keeton on Torts § 63, at 443–45 (5th ed. 1984). In *Smith,* the court considered "evidence before the jury of an agreement between the parties that the landlord had the right to inspect the premises and the exclusive right to make repairs therein, and that the tenant would refrain from making any repairs at all." *Smith,* 127 A.2d at 48. The court found that, "[a]s a matter of law, an agreement of that nature would be the equivalent of retention by the landlord of control of the leased premises for the purpose of making repairs." *Id.; see also Panaroni,* 256 A.2d at 252 ("[A]n agreement between the parties as to the landlord's right to inspect the premises together with his exclusive right to make repairs therein and the tenant's total abstention from making any repairs would be the equivalent of retention of control of the leased premises."). The particular circumstances of each case determine whether the landlord has maintained control of the premises or a portion of the premises, "[u]nless it is definitely expressed in the lease." [3] *Panaroni,* 256 A.2d at 251–52.

■ The lease between Fosdick and South Broad provides that "[t]he Landlord covenants and agrees, at its own expense, to make all structural repairs and replacements to the building containing the Premises, including, without limitation, ... to make all repairs to the windows, doors and openings, all electrical, heating and plumbing systems within the Premises...." Joint App. at 88. In addition, the lease provides that "the Landlord and the Landlord's agents may examine the Premises at any reasonable time." *Id.* at 87.

Moreover, in a series of requests for admissions submitted to South Broad and Devcon by Prodigy's counsel, the defendants admitted that Devcon had the exclusive right to make repairs and that Devcon had the right to inspect the premises. [4] For example, defendants admitted that "Fosdick Corporation as a tenant was not expected to hire anyone to come in and repair any of the steam lines." Joint App. at 144. They admitted that "Devcon Enterprises at and prior to the time of the loss, arranged for all repairs to the building." *Id.* They also admitted that "[t]he day-to-day responsibility for the management and maintenance of [the premises] was that of Devcon Enterprises." *Id.* They stated that Fosdick did not have any responsibility for maintaining or repairing the piping in its leased area. [5] *Id.* at 145. Although Fosdick was required to notify the landlord of defects if it was aware of them, Fosdick was not expected to inspect the pipes on the premises. *Id.* at 146. As discussed, as a matter of

---

**3.** As cases like *Smith, Panaroni,* and *Masterson* make clear, when the lease explicitly provides that the landlord has the exclusive right to make repairs and the right to inspect for defects, such an agreement amounts to retention of control by the landlord as a matter of law. *Smith,* 127 A.2d at 48. When there is no such formal agreement, whether the landlord has made an agreement to repair and has the right to inspect the premises is a question of fact for the jury. *See Masterson,* 179 A.2d at 596–97 (finding insufficient evidence before the jury to support a finding that the landlord had agreed to make repairs and had the right to inspect the premises).

**4.** Devcon admits it had general access to Fosdick's demised premises, but claims it did not have a key to the area where the leak occurred. Joint App. at 119. Prodigy disputed that contention at oral argument.

**5.** At oral argument, counsel for defendants claimed that Fosdick was authorized to make

certain repairs, relying on a portion of the lease that provides that the tenant "covenants and agrees to make no structural alterations, additions or improvements to the Premises, except those described in Exhibit C, without the written consent of the Landlord, which consent shall not be unreasonably withheld." Joint App. at 81. Exhibit C lists several electrical improvements and alterations Fosdick was authorized to make. *Id.* at 106. This portion of the lease does not give Fosdick any responsibility for maintenance or repairs, however, but refers to certain specific alterations or improvements it was entitled, but not required, to make. "[A] repair would consist of the correction of a condition which had become defective because of injury or of deterioration over a period of time, while an improvement would be a change in the original construction or installation in order to incorporate advancements in design." *Masterson,* 179 A.2d at 597. As the admissions described above make clear, South Broad and Devcon had sole responsibility for *repairs.*

Connecticut law, this agreement between Fosdick and South Broad constitutes retention of control by South Broad and Devcon of the plumbing system within the building for purposes of making repairs. Thus, South Broad and Devcon had a "duty to take reasonable care to keep [the plumbing system] reasonably safe." *Smith,* 127 A.2d at 47.

■ This rule of law is codified in the Second Restatement of Torts at section 357, and Connecticut courts have relied on that section in cases of this nature.[6] *See Masterson,* 179 A.2d at 597; *Youngset, Inc. v. Five City Plaza, Inc.,* 156 Conn. 22, 237 A.2d 366, 369 (1968). Section 357 makes clear that although the duty is founded upon contract, it is a tort duty and "extends to persons on the land with the consent of the lessee, with whom the lessor has made no contract." Restatement (Second) of Torts § 357 cmt. c (1965); *see also Webel v. Yale Univ.,* 7 A.2d 215, 217 (Conn.1939) (noting that "liability in negligence" is not "necessarily dependent on a pre-existing privity in legal relationship between the person injured and the person causing the injury"). Thus, the defendants' duty to use reasonable care to maintain the premises extended to Prodigy.

■ The district court held that the defendants' duty did not extend to physical harm to property or equipment, but was limited to liability for personal injury only. This reasoning was clearly in error. Connecticut case law and section 357 of the Restatement (Second) of Torts provide that the duty is to protect against both personal injury and damage to personal property.[7] *See*

*Pollack v. Gampel,* 163 Conn. 462, 313 A.2d 73, 81–82 (1972) (recognizing award for property damage and personal injury where landlord failed to keep premises reasonably safe pursuant to an agreement to maintain the building); *Youngset,* 237 A.2d at 368–69 (finding that upon proof of negligence landlord may be liable for damage to tenant's property caused as a result of a leaky roof). We find no basis in Connecticut law for drawing a distinction between property damage and personal injury and find that, having agreed to maintain the building in good repair, South Broad and Devcon owed a duty of reasonable care to Prodigy to maintain the building so as to prevent damage to its property.[8]

■ Finally, under Connecticut law, South Broad and Devcon may be held liable only if they failed to exercise "reasonable care to make the repairs after notice" of the defect. *Smith,* 127 A.2d at 47–48; *see also* Restatement (Second) of Torts § 357 cmt. d (1965). The defendants rely on a portion of the lease that states as follows:

> In no event shall the Landlord be responsible for any damage to persons or to the Tenant's property resulting from ... steam, gas, electricity, water from any source, dampness or any defect in the building unless such damage results from defects of which the Landlord has been given *actual written notice* by the Tenant, which defects the Landlord failed to correct in reasonable time.

Restatement (Second) of Torts § 357 cmt. c (1965). In this case, Devcon is alleged to be a general partner of South Broad; thus it makes little difference perhaps as a practical matter which is liable. Further, Devcon owed an independent duty to act with care in a situation where its failure to do so would cause injury to another. *See McDowell v. Federal Tea Co.,* 128 Conn. 437, 23 A.2d 512 (1941); *see also Swentusky v. Prudential Ins. Co.,* 116 Conn. 526, 533, 165 A. 686 (1933) ("[T]he duty to exercise reasonable care arises whenever the activities of two persons come so in conjunction that the failure to exercise that care by one is liable to cause injury to the other."). We therefore find that both South Broad and Devcon had a duty to keep the premises in repair.

---

6. Connecticut was one of the first states to approve the approach outlined in section 357 of the Restatement of Torts. *See Dean v. Hershowitz,* 119 Conn. 398, 177 A. 262, 265 (1935) (citing with approval section 357 of the first Restatement of Torts).

7. Section 357 provides that a landlord is liable for "physical harm" resulting from failure to make repairs. In the definitional section of the Restatement, physical harm is defined as "the physical impairment of the human body, or of land or chattels." Restatement (Second) of Torts § 7 (1965).

8. As section 357 makes clear, a landlord's duty to maintain the property is nondelegable, and the landlord may be liable even if the injury is due to the negligence of an independent contractor.

Joint App. at 88 (emphasis added). It is undisputed, based on the affidavits and depositions submitted, that neither Fosdick nor Prodigy gave the defendants actual written notice of the defective pipe. On that basis, the defendants claim that this provision of the lease absolves them from liability. We cannot agree. Only Fosdick was a party to the lease agreement, not Prodigy. Thus, although Fosdick may be bound by this provision in the lease, Prodigy is not. Because the express terms of the provision do not apply to Prodigy, we need not address whether this provision in the lease would be void as against public policy under Connecticut law if it sought to absolve South Broad and Devcon from liability for their own negligence. *See Griffin v. Nationwide Moving & Storage Co.*, 187 Conn. 405, 446 A.2d 799, 803 (1982) ("The law does not favor contract provisions which relieve a person from his own negligence.").

■ Connecticut law does not require that a landlord have actual notice of a defect to be held liable for a defective condition in a portion of the premises over which the landlord has reserved control. Connecticut courts have imposed liability on landlords and building managers in circumstances such as those presented in this case if the landlord or building manager had *constructive* notice of the defect. Landlords have constructive notice of a defect if they "were chargeable with notice of it because, had they exercised a reasonable inspection of their premises, they would have discovered it[.]" *Cruz v. Drezek*, 175 Conn. 230, 397 A.2d 1335, 1339 (1978). The notice, actual or constructive, "must be notice of the very defect which occasioned the injury and not merely of conditions naturally productive of that defect. . . ." *Id.*

For example, in *Pollack*, 313 A.2d at 77, a pipe burst in the wall of an apartment building causing hot water to spill onto the floor of the plaintiff's apartment, injuring her and damaging her personal property. The landlord conceded that it had maintained control over the plumbing system in the building. *Id.* "The lease provided that the landlord was responsible for building maintenance and also that the landlord should be permitted to enter the apartment during reasonable hours to inspect or make necessary repairs." *Id.* at 76–77. The plaintiff prevailed at trial, but the landlord appealed, urging that because the pipe that burst was behind a wall, he could not have discovered the defective condition even upon reasonable inspection and therefore there was no evidence that he had constructive notice of the defect. The Connecticut Supreme Court rejected that contention because of evidence that the plaintiff had heard a hissing noise in the wall where the pipe was located and complained of the noise to the landlord several days before the pipe burst. On that basis, the court found that if the building manager had made a reasonable inspection, he would have heard the hissing noise and then would have been under an obligation to inspect further. *Id.* at 78–79. Thus, the landlord was liable although it had no actual notice of the defect.

Similarly, in *Kowinko v. Salecky*, 5 Conn. Cir. Ct. 657, 260 A.2d 892, 897–98 (1969), based on the landlord's agreement to repair the premises and retention of a key to the premises, the court found that the landlord had retained control of the premises for the purpose of making repairs. In *Kowinko*, a sash cord on a window broke while the plaintiff was washing it, causing it to close on the plaintiff's hands. The landlord argued that he could not be held liable because there was no evidence from which a jury could conclude that he had actual or constructive notice of the defect. The court disagreed, citing evidence that the sash cord was frazzled and worn such that a reasonable inspection would have revealed its defective condition. *Id.* at 898. On that basis, the court upheld the verdict in favor of the plaintiff.

We shall consider, therefore, whether Prodigy has produced evidence the defendants had constructive notice of the defect. We recognize that negligence is ordinarily a question of fact and thus "[i]ssues of negligence are ordinarily not susceptible of summary adjudication but should be resolved by trial in the ordinary manner." *Fogarty v. Rashaw*, 193 Conn. 442, 476 A.2d 582, 584 (1984) (quoting *Spencer v. Good Earth Restaurant Corp.*, 164 Conn. 194, 319 A.2d 403 (1972)). In addition, "[a] notice question or-

dinarily raises a question of fact inappropriate for resolution by summary judgment." *Casanova Club v. Bisharat,* 189 Conn. 591, 458 A.2d 1, 3 (1983). Moreover, the district court apparently did not rule on this question below, finding instead that South Broad and Devcon had no duty to use reasonable care to prevent property damage.[9] Nevertheless, we will address the negligence issue because if the defendants are entitled to judgment as a matter of law on any ground, it would be foolish to remand the case for trial.

The question therefore becomes whether there is some evidence in the record before us sufficient to charge South Broad and Devcon with constructive notice of the leak because, had they engaged in a reasonable inspection of the property, they would have discovered it. *See White v. E & F Constr. Co.,* 151 Conn. 110, 193 A.2d 716, 718 (1963). Constructive notice may be inferred where there is evidence that the defect existed "for such a length of time that the [landlord] should, in the exercise of due care, have discovered it in time to have remedied it." *Morris v. King Cole Stores,* 132 Conn. 489, 45 A.2d 710, 711 (1946).

Prodigy has produced evidence that the pipes in the building were over thirty years old and that six other similar leaks occurred in the building prior to the leak in question. Joint App. at 158, 121. An engineering report describes the pipe from which the leak occurred as one inch in diameter. *Id.* at 158. Prodigy has characterized the point from which the water leaked as "pinhole" size. *Id.* at 146. The report issued by the maintenance staff after the leak indicates that roughly one thousand gallons of water escaped from the leak prior to its discovery. *Id.* at 109. From this evidence, a reasonable jury could infer that in order for one thousand gallons of water to leak from such a small break in the pipes, the leak must have commenced quite a long time before it was discovered. Given the generally poor condition of the pipes throughout the building, which might suggest a need to check for leaks on a regular basis, we believe a jury could conclude that a reasonable inspection would have revealed the leak much earlier.

We recognize that the evidence indicating constructive notice in the record before us is fairly weak. Nevertheless, we are reluctant to dispose of this case on this issue when we do not have all of the discovery material before us. In addition, as noted, notice is normally a question left to the jury. Thus, satisfied that there is at least some evidence from which a jury might find constructive notice, we leave to the factfinder to determine whether South Broad and Devcon had constructive notice of this leak and did not exercise reasonable care in the maintenance of the building.

For the foregoing reasons, we reverse the entry of summary judgment and remand to the district court for further proceedings consistent with this opinion.

---

9. This narrow ruling by the district court may be attributable to the defendants' brief on the motion for summary judgment. The main thrust of the defendants' motion for summary judgment in the district court was that there was no privity of contract between Prodigy and the defendants.